ROYAL INSURANCE COMPANY,
Plaintiff/Appellant,

v.

ALLIANCE INSURANCE COMPANY,
the Southern General Agency, Inc., and
the Tennessee Insurance Agency, Inc.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 14, 1985.

Application for Permission to Appeal
Denied by Supreme Court
May 6, 1985.

Clinton V. Butler, Jr., of Menzies, Rainey, Kizer & Alderson, Jackson, for plaintiff/appellant.

Edward G. Bryant of Waldrop, Farmer, Breen & Bryant, Jackson, and J. Kimbrough Johnson of Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, for defendants/appellees.

BROOKS McLEMORE, Retired Chancellor, Special Judge.

This lawsuit results from a dispute between two insurance companies as to which company must ultimately pay on a homeowner loss as a result of binders issued by the Tennessee Insurance Agency, Inc., agent of both insurance companies.

On August 18, 1982, Jerry King owner, with his wife, of a home in McNairy County mortgaged to FHA, went to the Tennessee Insurance Agency, Inc. to obtain homeowner coverage. The Agency, through its employee Lynn Smith, bound coverage for him but did not tell him the name of the company. The Agency then submitted a binder application to Royal Insurance Company on that same date. The application provided as follows:

In consideration of the premium to be paid, such coverage as is applied for herein is bound effective from the time and date shown above. The insurance afforded by this binder is subject to all the terms and conditions of the policy and forms applied for. This binder shall terminate upon the effective date of a formal policy issued in replacement hereof or upon 10-days notice of cancellation to the Insured and Mortgagee, if any, designated herein. Notwithstanding anything to the foregoing this insurance shall terminate not later than the time shown above standard time at the location of the property involved, on the 30th day following the effective date.

The Agency's authority to act for Royal was in writing and said writing stated in part:

2. AUTHORITY OF AGENT:
 a. To issue binders and policies ...
 b. To effect cancellation of binders and policies unless prohibited by their terms ...

Because of heavy business in the office Royal did not act upon the application until September 21, 1982, at which time Royal sent a letter to the Agency declining coverage. The material portion stated:

We have received the above application and the overall exposure is more than we desire to provide. This is a low value dwelling located more than seven miles from a volunteer fire department and the

insured has a wood burning stove. Please accept this as a declination or let us have your advice. As we are out of the thirty day binder it will be necessary to mail direct notice from our office.

Royal sent what it meant to be a ten day notice of cancellation dated September 22, 1982 to the Agency and to King but none to the mortgagee. The typist inadvertently left out the date of cancellation. This notice contained the following statement:

You are hereby notified that the Policy or Bond designated herein unless sooner terminated, is cancelled as stated above in accordance with the terms and conditions of this Policy or Bond. Any return premium due under this Policy or Bond if not tendered herewith will be refunded upon demand.

In the space provided for "Policy or Bond issued" the word "application" is written.

King did not receive this notice for several days. Lynn Smith, of the Tennessee Insurance Agency, Inc., received the declination letter on September 22, 1982, and immediately called Royal and told them that another company would be placed on the risk. Smith requested that the picture of the house be sent back to him and it was, he having received it September 23, 1982.

Smith testified that he bound coverage with Alliance Insurance Company [1], a company that specializes in substandard risks, and prepared a binder application and mailed same to Alliance on September 23, 1982. Mr. and Mrs. King had no knowledge of this action.

The insured property was totally destroyed by fire between the hours of 2:00 A.M. and 5:00 A.M. on September 24, 1982.

It is contended by Royal that Royal would have remained on the risk until October 2, 1982, unless the agent and the insured obtained coverage elsewhere. The contention of Royal is that when the Ten-

1. Southern General Agency, Inc., is a managing general agency. The Tennessee Insurance Agency was a broker in September, 1982, that submitted business to the Southern General Agency, Inc., to be placed in the Southern Gen-

eral Agency, Inc.'s substandard market. The Alliance Insurance Company was one of the companies with which Southern General Agency, Inc. placed business.

nessee Insurance Agency bound the insurance with Alliance it terminated the coverage with Royal under the provision "unless sooner terminated" contained in the cancellation notice.

Proof of loss was filed with both companies. Neither company accepted coverage. The Tennessee Insurance Agency, Inc., being agent for both Royal and Alliance, took the position that Alliance had the coverage. Alliance denied coverage because it contended that the application to it was back dated and mailed after the fire and that there were certain misrepresentations in the applications.

On March 18, 1983, Royal Insurance Company filed this suit for a Declaratory Judgment in McNairy County, naming as defendants Jerry Bryant King, Farmers Home Administration, The Tennessee Insurance Agency, Inc., the Southern General Agency, Inc. and Alliance Insurance Company. Later Mrs. Brenda Louise King, wife of Jerry Bryant King was added as a defendant. On May 28, 1984, the Southern General Agency, Inc. and Alliance Insurance Company were allowed to amend their answer by adding a cross-claim against Tennessee Insurance Agency, Inc. Alliance and Royal subsequently settled the claim in full with the Kings and the Farmers Home Administration, each of the companies paying one-half in a total settlement of $34,500.00.

After hearing all the evidence the Chancellor found that the Tennessee Insurance Agency, Inc. had the authority to bind coverage for both Royal and Alliance; "and while it had authority to bind and terminate coverage, the Court finds that the agency did not have the authority to transfer coverage from Royal to Alliance without the consent, waiver, acquiescence or ratification of Mr. and Mrs. King," and he found that there was no such consent, waiver, acquiescence or ratification and therefore the Royal Insurance Company should stand the loss.

As to the fact question of time of mailing to Alliance, the Chancellor found that the application was mailed to Alliance before the fire and if effective at all it was effective at the time of the loss.

Royal has appealed.

The correctness of the Chancellor's rulings are the issues presented.

 As to the issue as to the time of mailing the application to Alliance, the evidence is conflicting. The Chancellor chose to believe the evidence presented that the application was mailed on September 23, 1982. In a non-jury case, such as this, review of findings of fact by the trial court shall be de novo on the record, accompanied by a presumption of the correctness of the findings unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d). Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses. *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959) and numerous Court of Appeals cases, *e.g., Davis v. Smith*, 650 S.W.2d 47 (Tenn.Ct.App.1983); *Sisk v. Valley Forge Insurance Co.*, 640 S.W.2d 844 (Tenn.Ct.App.1982). The evidence does not preponderate against the finding of the trial court.

The precise legal issue involved as to whether the Tennessee Insurance Agency, Inc. properly transferred binder coverage for the Kings from Royal to Alliance does not seem to be dealt with by Tennessee cases. The issue is dealt with in two fairly old Texas cases and the final rationale of the Commission of Appeals of Texas is very persuasive and we apply it here. *See Norwich Union Fire Insurance Society v. Dalton*, 175 S.W. 459 (Texas Civ.App. 1914) and *Dalton v. Norwich Union Fire Insurance Society*, 213 S.W. 230 (Texas Com. of App. 1919).

 Where an insurance *policy* has been issued, in the absence of consent of the insured, special authority, waiver or ratification, an agent representing insurer as

well as another insurance company cannot transfer risk unless substitution of a new policy for existing policy has been approved by insured. *Calvert Fire Insurance Co. v. American National Bank and Trust Co.*, 222 Tenn. 515, 438 S.W.2d 545 (1969); *Martin v. Insurance Co.*, 106 Tenn. 523, 61 S.W. 1024 (1901); *Commercial Casualty Insurance Co. v. Columbia Casualty Co.*, 22 Tenn.App. 656, 125 S.W.2d 493 (1938); *Reserve Insurance Co. v. Brokerage Surplus Corporation*, 570 F.2d 487 (3rd Cir. 1978); *Moore v. New Amsterdam Casualty Insurance Co.*, 199 F.Supp. 941 (E.D. Tenn.1961). This is so because when a policy is written and accepted by the insured, the agent has no further connection with the contract.

In the case before us there is a substantial difference. Here we are not dealing with issued policies of insurance but with a binder. It is not disputed that these oral contracts of insurance are valid and in widespread use.

In our opinion, the case does not turn upon the question of the insured's consent to the substitution but upon whether the substitution by Alliance's agent created a binding contract of insurance on the part of Alliance.

Lynn Smith and Becky Ward, employees of the Tennessee Insurance Agency, Inc., and Lois Hagar, employee of Royal, testified that it was the custom in the insurance industry to transfer a binder from one company to another if the first one declined the risk without waiting for the end of a ten day cancellation period.

Jerry King testified that he wanted to be covered. He was not told the name of his company nor did he care. He entrusted the choice of companies to the Tennessee Insurance Agency, Inc. He first learned of these two companies after the loss. There is no showing that he knew any of the provisions as to the time length of the binder application, but even if he did, he was depending upon the Tennessee Insurance Agency, Inc. to obtain insurance. He testified, "Well, I paid the agency, Tennessee Insurance Agency, the forty percent of the annual premium; and I hadn't heard nothing from them as far as whether or not the company had accepted or denied it. So, as far as I was concerned, I was covered." King did testify that he wanted a reasonable price and that he might have shopped around if he had been told his premium with Alliance would be $480.00 instead of $265.00, but there was never any proof that insurance could have been obtained cheaper. Rebecca Ward testified, "If that's the only market that we have that will accept the coverage, we do normally go ahead and write the coverage. We inform him of the additional premium when the policy comes in. If he feels like he can get it somewhere else cheaper, then we cancel it. Then we'll do so and just charge him what the other premium was." The relationship of the Tennessee Insurance Agency, Inc. with King was to get him coverage. Under our law he was the agent of Royal and Alliance and under the facts he had power to bind insurance with these companies.

■ It is not disputed that the Tennessee Insurance Agency, Inc. was authorized to bind initially either of the companies on the risk. It could have bound Alliance instead of Royal on August 18, 1982, when it bound Royal and we know of no reason why it could not enter into a binding contract on behalf of Alliance on September 23, 1982, when notified that King was unacceptable to Royal without any notification whatsoever to King. The fact that the cost of the insurance policy if issued was greater is certainly not determinative. Of course, the cost when made known to King would be a factor in his decision as to whether to keep the insurance. We cannot believe that if the binder with Royal had in fact expired according to its written terms at the end of 30 days and the Tennessee Insurance Agency, Inc. had failed to bind coverage elsewhere whether he was notified or not that King, or anyone else similarly situated, would have agreed that the Tennessee Insurance Agency, Inc. had performed its obligation to obtain coverage.

The Tennessee Insurance Agency, Inc. having power to terminate binders on Roy-

al did terminate said binder when a binder was properly made and application mailed to Alliance. Royal was off the risk at that moment. There is no reason why the binder as finally made with Alliance was not as effective as it would have been had it been made with Alliance by the original binder.

It follows, therefore, that the judgment of the trial court awarding judgment of $17,250.00 to Alliance against Royal Insurance Company is reversed and judgment will be entered in favor of Royal Insurance Company against Alliance Insurance Company in the amount of $17,250.00.

█ We agree with the Chancellor that Alliance Insurance Company and the Southern General Agency are not entitled to recover anything from the Tennessee Insurance Agency, Inc. as there is no finding of negligence, fraud or other wrong on the part of the Tennessee Insurance Agency, Inc. The cross-complaint of Southern General Agency, Inc., and Alliance Insurance Company against the Tennessee Insurance Agency, Inc. is dismissed.

Costs are adjudged against Alliance Insurance Company for which let execution issue, if necessary.

TOMLIN and HIGHERS, JJ., concur.

### ORDER

PER CURIAM.

Upon consideration of the application for permission to appeal and the entire record in this cause, the Court is of the opinion that the application should be denied.