IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2000

## MELISSA DANISE FOSTER KORNBLEE (JARAMILLO) v. KEVIN RICHARD KORNBLEE

**Appeal from the Circuit Court for Sumner County**
**No. 19043C      Thomas Gray, Judge**

_____

**No. M2000-00379-COA-R3-CV - Filed February 9, 2001**

_____

In this post-divorce proceeding, Melissa Danise Foster Kornblee (Jaramillo) appeals the trial court's actions in ordering mental health counseling and treatment of the parties' minor children by a court appointed professional, declining to allow her to relocate with the minor children to Wyoming, allowing Father unsupervised visitation with the children, and awarding Father attorney's fees in defending her motion to suspend unsupervised visitation.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

Helen Sfikas Rogers and Lana Lennington, Nashville, Tennessee, for the Appellant, Melissa Danise Foster Kornblee (Jaramillo).

Laura Y. Goodall, Gallatin, Tennessee, and Robert Todd Jackson, Nashville, Tennessee, for the Appellee, Kevin Richard Kornblee.

### OPINION

Melissa Foster Kornblee and Kevin Richard Kornblee are the parents of three minor children, Jonathan born June 9, 1990, Steven born March 26, 1993, and Joseph born November 1, 1995.  The Mother was granted temporary custody of the minor children during the pendency of the divorce case with specific visitation provided to Father.

On August 5, 1999, Mother filed a petition requesting the trial court to require supervision of any visitation with Father.  The Mother attached to her petition the affidavit of Dr. Ruth A. Smith, P.H.D., a licensed clinical psychologist, asserting certain physical, mental, and sexual abuse allegedly committed upon the children by the Father.

On September 25, 1999, Husband was favored by a five page, fifteen numbered paragraph letter from Wife, providing in part as follows:

> This is being sent to inform you that it is my intent to move my residence outside the state of Tennessee.
>
> The location of my proposed new residence shall be within the South Central Wyoming Region.
>
> Reasons for relocation are as follows:
>
> 1. It is my intention to be able to establish a web design service for a particular market niche catering to Brides/Engaged couples. There is a tremendous void in this distinctive arena. Upon completion of extensive research and self-training, I conclude that I can broach this area and thus provide an income to support my children and myself. I have chosen to focus on a certain niche rather than a broad-based web design service. By concentrating primarily upon this section of the population, the business will not be easily influenced by sways in the economy or other external conditions.
>
> . . .
>
> 5. I am establishing a new business in which the market is extremely more favorable within the West region, particularly within the areas of Denver, CO and Salt Lake City, UT. The same marketing opportunities do not exist within a six-hour drive from the Nashville, TN area and thus would prevent the success of my business. Whereas Nashville and surrounding area have only two bridal events per year, Denver alone has 16 major Bridal Shows, and approximately a dozen more events. Salt Lake City has eleven major bridal shows on schedule at this time. Other opportunities also exist in Laramie, WY; Cheyenne, WY; Jackson Hole, WY; Boise, ID; & Billings, MT. At this time, there is no known competition catering to this specific marketing area; thus, providing an excellent time to reach into this niche and establish a credible business.
>
> 6. Cost of living is comparatively cheaper. The Cost of Living Index rates list Nashville at 96.86, while Casper, WY (a general city example of the area) is listed as 89.63. A 3-bedroom house in Nashville has an average price of $130,356; in Casper, WY it is at $92,500. A 2-bedroom apartment rents in Nashville for approx. $895; in Casper, WY for $425. The property tax rate in Nashville is 1.13%; in Casper, WY it is 0.8%. Sales tax in Nashville (state and local) is 8.25%; in Casper, WY it is 5.0%.

7. The crime rate index for the Nashville Area is listed at 282. For Casper, WY it is at 44. This information is based upon a national average being at 100. A value of 200 means that the city has twice the crime-rate as the average city. A value of 50 means that the city has half the crime rate of the average city.

8. Cultural opportunities abound for the children's exposure. Many educational experiences are available within the area that are found primarily only in places such as New York or Chicago, yet without the cost of living; crime; etc. associated with those areas. Historical sites, top-rate museums, art exhibitions, music, theaters, a brand new Aquarium, amusement parks, etc. are all within easy access.

9. The Rocky Mountains provide some of the most fantastic scenery in the world. The children and I greatly enjoy the snow and have always found peacefulness and serenity in the mountains. There are many chances to view wildlife; herds of antelope, buffalo, elk, moose, wild horses, and deer. Since we enjoy being outdoors and exploring nature, this area would grant us a wonderful lifetime experience to do so.

10. The children would continue to be home-schooled; thus preventing further disruption of their lives. There are several home-schooling groups in the area, which afford ample "socialization" as well as being able to participate in extra-curricular programs such as sports and band if they so choose (something that they are not able to do here in TN).

. . .

15. We are presently without a home of our own, living with my parents since August 23, 1999 until the finalization of the proceedings. Since our business is to be focused in the West region, it would be in our best interests to settle in that area; rather than buying another home and then uprooting the children once again. All of us need to have some stability and a home of our own.

In short, the relocation is what I feel would provide the children and I with an excellent option for establishing and maintaining a successful business; ensuring not only my future, but theirs' as well. We would live in an area with many opportunities for both educational and entertainment experiences. Our costs of living will be much cheaper, enabling me to better provide for the children. The crime rate is tremendously less (over 6.4 times LESS!!!). We would simply have a much better quality of life available to us versus if we were to remain in TN.

Pursuant to TN CODE 36-6-108, you have been given notice of intent to move; the location of the proposed new residence; & reasons for the relocation. You may file a petition in opposition within thirty (30) days of receipt of this notice.

Sincerely,


Melissa D. Kornblee

CC: Helen Rogers

By a somewhat remarkable coincidence, the discovery deposition of the Mother revealed that in April 1998 she had established an internet relationship with Art Jaramillo, who lived in South Central, Wyoming, and introduced him to the children of the parties by way of internet correspondence beginning in September 1998. The relationship progressed and in December 1998, unbeknownst to Father, she took the children on a fourteen day vacation to the home of Mr. Jaramillo where the children slept in one bedroom and Mother shared a bedroom with Mr. Jaramillo.

Following the discovery of Mother's relationship with Mr. Jaramillo and her September 25, 1999, ultimatum, disclosing her intent to relocate to South Central Wyoming, with "my children," Father filed his petition on October 5, 1999, to restrain Mother from relocating with the parties' three minor children.

The trial of the divorce case was held on October 7, 1999. At the conclusion of the trial, the court declared the parties divorced pursuant to Tennessee Code Annotated Section 36-4-129, awarded custody to Mother, and specified parental rights, including extensive visitation and communication with Father. Property was divided, child support was set, and a restraining order was issued restraining and prohibiting Mother from relocating the children from Tennessee without approval of the court.

The final decree of divorce further provided:

IT IS FURTHER ORDERED AND ADJUDGED by the Court that the Mother's request for a Restraining Order against the Father taking the children to his church is hereby denied.

IT IS FURTHER ORDERED AND ADJUDGED by the Court that the Court hereby appoints _____*Celia Woolverton Peak   Phone: 615-327-1264*_____ as a family therapist to counsel both parties and the three (3) minor children. The Court further

requires both parties[1] and the three (3) minor children to go to the therapist and participate in the sessions as determined by the therapist. The therapist will file a report with the Court on or before January 30, 2000, and the Court will thereafter consider overnight visitation for the Father.

Mother did not appeal from the final decree of divorce.

On November 29, 1999, the trial court addressed to counsel for both parties, a letter disclosing in part:

> On the 23rd day of November, 1999, Celia Woolverton Peak made an inquiry as to the role and function of Ms. Michael Murphy[2] and Dr. Ruth Smith.
>
> It was my intent that Celia Woolverton Peak would work as a Court appointed neutral in the best interest of the minor children, and that she would be the only one serving as counselor/therapist for the children.
>
> It was not my intent to prohibit Kevin Kornblee from continuing counseling with Ms. Michael Murphy; it was not my intent to prohibit Melissa Kornblee from seeing Dr. Ruth Smith.
>
> Dr. Smith nor Ms. Murphy are to provide service to the children.

On December 14, 1999, counsel for Mother filed a motion questioning the authority of the Court to appoint Dr. Peak asserting in part:

> 7.      Plaintiff believes that the Court's actions in seeking the recommendation, first of all, of Father's counselor who is a lesser qualified, lesser experienced and lesser skilled health care provider rather than Dr. Ruth Smith who has a Doctorate in clinical psychology as well as extensive skills in treatment, or consulting a completely neutral psychiatrist or clinical psychologist independent of this action to obtain a recommendation, was improper given the circumstances of this case and does not demonstrate the neutrality necessary from the Bench.
>
> 8.      Moreover, the Court's letter of November 29, 1999 is an attempt by the Court to dictate mental health care of the minor children in a non-emergency situation and interfere with their long-term therapeutic relationship with Dr. Ruth

---

[1]     Melissa Danise Kornblee shall within 10 days of October 19, 1999 call Ms. Peak for appointment. Kevin Richard Kornblee shall within 10 days of October 19, 1999 call Ms. Peak for appointment. ss *Tom Gray*, Judge 10-19-99.

[2]     Ms. Michael Murphy was a psychologist employed by Mr. Kornblee to help him make whatever changes in his personal behavior that would assist in his relationship with the children.

-5-

Smith in violation of the very strong and long line of cases and authority in Tennessee that establish a parent's right to raise their own children as they see fit and without outside interference. *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Simon v. Simon*, 900 S.W.2d 682 (Tenn. 1995); *Ellison v. Ellison*, 994 S.W.2d 623 (Tenn. App. 1998); *Rust v. Rust*, 864 S.W.2d 52 (Tenn. App. 1993); *Baker v. Baker*, 1997 W.L. 731939 (Tenn. App. 1997). Simply put, this Trial Court has no basis to change the children's pediatrician, dentist, or clinical psychologist without strong, compelling, life-threatening reasons. The Court's confusion in its letter of November 29, 1999 is obvious when the Court states it does not intend to "prohibit" Melissa Kornblee from seeing Dr. Ruth Smith since Dr. Smith has never treated the Mother but only the children.

9. For all the above-mentioned reasons, Plaintiff/Mother asks this Court to review its appointment of Ms. Celia Woolverton Peak, to reconsider whether or not the Court needs to have another health care provider involved in this family situation and, in any event based on the very clear authority presented, withdraw its instruction of the letter issued on November 29, 1999.

On this same December 14, 1999, Mother filed a petition seeking to suspend unsupervised visitation with Father based on another affidavit of Dr. Ruth A. Smith.

The Father responded to the December 14, 1999 petition and motion by Mother denying the allegations thereof and seeking an award of attorney's fees for the defense of the motion and petition.

Following a lengthy hearing on January 19, 2000, of all pending motions, the trial court entered its order of February 2, 2000, holding that:

[A]fter hearing the testimony of the parties, of Ms. Celia Peak, Ms. Michael Murphy, and of Mr. and Mrs. Foster, refused to consider the Affidavit of Dr. Ruth Smith or to grant a continuance to depose Dr. Smith. After hearing the testimony of those parties present, including the testimony of Ms. Peak that she no longer wished to be involved in this case, the Court denied the Mother's Motion to Suspend Unsupervised Visitation or to allow her to select mental health care providers for the minor children rather than the Court.

The court further held:

ORDERED, ADJUDGED and DECREED that the Court denied the Mother's Motion to determine the children's mental health care provider and determined that

it did have the authority to make those decisions[1] and, thus, *enjoined* and *restrained* the Mother from taking the children to visit with Dr. Ruth Smith, pending further orders of the Court, and it is further

ORDERED, ADJUDGED and DECREED that the Motion to Suspend Unsupervised Visitation is denied, and awards Mr. Kornblee reasonable attorney's fees against Ms. Foster[2] in the amount of $2640.00 which shall be a judgment in favor of Kevin Richard Kornblee against Melissa Danise Foster for which execution may issue, if necessary . . . .

From this order of February 2, 2000, Melissa Foster Kornblee (Jaramillo) has appealed.

On appeal from this non-jury trial, the applicable standard of review is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings of fact of the trial court unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d).

Appellant first asserts that the trial court was in error and exceeded its authority "by directing who will provide mental health counseling or treatment for the parties' minor children by refusing to allow Dr. Ruth Smith to continue treatment and counseling of the minor children and by preventing the custodial parent from seeking mental health care treatment for her minor children."

On this issue, Appellant relies primarily on *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). Such reliance is misplaced. *Hawk* involved an attempt by grandparents to obtain visitation with grandchildren under the Grandparents' Visitation Act (T.C.A. 36-6-301 (1985)). The record in *Hawk,* as stated by the Tennessee Supreme Court, reflected "a family history of bickering and personality clashes that ultimately resulted in a decision by the appellants, Bob and Bay Hawk, that neither they nor their children, Megan and Steven, would associate with Bob's parents, appellees Bill and Sue Hawk." *Hawk*, 855 S.W.2d at 575 (Tenn. 1993).

In declaring grandparent visitation unconstitutional over the joint objections of fit parents, the Supreme Court stated:

> In this case, the paternal grandparents directly challenge this fundamental privacy interest by seeking court-ordered visitation. Bill and Sue Hawk argue that

---

[1]    At the hearing on the 7th day of October, 1999 this Court ordered therapy for the children by a court appointed neutral mental health provider. Parents were ordered to participate. The purpose was to attempt strengthening the bond between children and father and included was for the Court to take action lessening impact of divorce on the children and to try to provide professional assistance so the children could grow and develop as secure stable individuals. A short time frame was included. ss *Tom Gray, Chancellor.*

[2]    Mrs. Kornblee resumed use of her maiden name Melissa Foster after the October 19, 1999 divorce decree.

grandparent visitation is a "compelling state interest" that warrants use of the state's *parents patriae* power to impose visitation in "best interests of the children." They insist that a judicially determined finding that visitation is in the best interests of the children is a sufficiently compelling justification to override the parents' united opposition, regardless of the fact that the parents' fitness is not challenged and that the parents' domestic situation has never been the subject of judicial concern. We find, however, that without a substantial danger of harm to the child, a court may not constitutionally impose its own subjective notions of the "best interests of the child" when an intact, nuclear family with fit, married parents is involved.

*Hawk*, 855 S.W.2d at 579 (internal footnotes omitted).

In a divorce and custody situation, the nuclear family is destroyed and the authority of the court is clear. Tennessee Code Annotated Section 36-6-101 provides:

Decree for custody and support of child-Enforcement-Juvenile court jurisdiction-Presumption of parental fitness-Educational seminars. -(a) (1) In a suit for annulment, divorce, or separate maintenance, where the custody of a minor child or minor children is a question, the court may, notwithstanding a decree for annulment, divorce or separate maintenance is denied, award the care, custody and control of such child or children to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand, and the court may decree that suitable support be made by the natural parents or those who stand in the place of the natural parents by adoption. Such decree shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require.

Melissa Foster Kornblee did not appeal the final decree of divorce entered October 19, 1999, that appointed Celia Peak as family therapist for the family including the children. She waited until December 14, 1999, before filing her untimely objections to the action of the court in appointing a therapist. At the October 7, 1999, final divorce hearing, the trial court was clearly not impressed by the testimony of Dr. Ruth Smith. The trial court observed: "I was a little bit concerned about Dr. Smith's testimony that she always takes what someone tells her at face value. She took at face value what Mrs. Kornblee told her, and she said, 'I always take that at face value,' and I expressed to her that I thought perhaps she should have an honest touch of scepticism relative to certain situations."

It was after hearing the testimony of Dr. Smith at the trial and after hearing and adjudging the credibility of all of the witnesses that the trial court made its decision to appoint Ms. Peak as an independent and unbiased family therapist. At the conclusion of the January 19, 2000 hearing, the court reiterated its purpose to appoint an independent and unbiased therapist:

The court explained on October 7th that the therapy was for the purpose of attempting to strengthen the bond between the children and the father. And I am going to exercise what I consider to be the authority of the Court to take action that the Court finds is in the best interest of the children.

So I don't find the motion well taken. I find that this Court is supported by the case law that exists in what the Court was attempting to do with helping to mend the bond between the father and the children.

The issue before the court was not the vesting of custody in Mrs. Kornblee. Rather, the issue was the relationship between the minor children and their father. The trial court, listening to all of the testimony and viewing all of the witnesses, concluded that Mrs. Kornblee was engaged in a studied effort to destroy the relationship between the children and their father and that Dr. Smith, who was Mrs. Kornblee's selection for therapy with the children, was not only biased but ready to accept at "face value" anything Mrs. Kornblee told her about Mr. Kornblee.

Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987). Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses. *Royal Insurance Co. v. Alliance Insurance Co.*, 690 S.W.2d 541, 543 (Tenn.App. 1985). *Tenn-Tex Prop. v. Brownell-Electro, Inc.*, 778 S

*Brewer v. Brewer*, 869 S.W.2d 928, 934 (Tenn.Ct.App. 1993).

Given the circumstances in this case, the trial court certainly did not abuse its discretion in appointing an unbiased therapist who could in the words of the trial court be "new and neutral to this situation, and who would work from the perspective of the Court."

As to the effort of Mrs. Kornblee to move the children to Wyoming, the trial court specifically found that there was "not a compelling reason for the mother to relocate the children." Indeed, at the January 19, 2000, hearing Mrs. Kornblee testified that she "has no plans to take the children to Wyoming."

The relocation issue is best discussed in the second issue raised by the Mother which asserts that the trial court erred in allowing Mr. Kornblee unsupervised visitation.

At the conclusion of the January 19, 2000, hearing, the trial court observed:

Now, on the motion to suspend unsupervised visitation, that is denied. The evidence does not preponderate that the father has sexually abused or in any other way physically abused these children. The credibility of Ms. Foster, the mother, is lacking. She testified, No, I'm not trying to prevent a relationship with the father. I'm trying to get it to be appropriate. I don't find that credible. She is not trying to get it appropriate. She wants to limit, restrain, interfere with the visitation.

On the make up visitation where the Court was being reasonable, Ms. Foster was unreasonable. She wants to take the day away and then call the day that he can have his make up visitation. That's not being reasonable. It's not within the spirit of the final decree.

The only evidence that the Father had sexually abused, or in any way physically abused, these children came from Mrs. Kornblee and her selected therapist who accepted anything Mrs. Kornblee told her at "face value."

Here again we are faced with a credibility issue addressed by the trial court. When the testimony of Ms. Peak, the court appointed therapist, is considered in contrast to the testimony of Dr. Smith relative to the actual relationship between the children and the father, it cannot be said that the trial court abused its discretion, either in preventing Mrs. Kornblee from relocating the children to Wyoming or in refusing to restrict Mr. Kornblee to supervised visitation. Given the vindictive spirit displayed in the record by Mrs. Kornblee, the trial court did not err in refusing to allow the children to relocate to Wyoming and in declining to restrict the visitation of the children with their father to supervised visitation.

The last issue asserted by Mother is the award of attorney's fees to Mr. Kornblee in resisting the second effort by Mrs. Kornblee to restrict his visitation to the children on allegations of sexual and physical misconduct which the trial court found to be groundless. Trial courts in Tennessee are vested with wide discretion in the award of attorney's fees in post-divorce domestic proceedings and this Court will not set aside the action of the trial court unless an abuse of discretion is shown. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v.* Storey, 835 S.W.2d 593, 597 (Tenn.Ct.App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn.Ct.App. 1964)). In this case the trial court did not abuse its discretion.

The judgment of the trial court is in all respects affirmed and costs are assessed to Appellant, Melissa Danise Kornblee (Jaramillo). The case is remanded to the trial court for such further proceedings as may be necessary.

 

 

_____
WILLIAM B. CAIN, JUDGE