# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 18, 2003 Session

## JAMES CARROLL, ET AL. v. STATE OF TENNESSEE

**Direct Appeal from the Claims Commission**
**No. 204193     Randy C. Camp, Commissioner**

---

### No. W2002-02105-COA-R3-CV - Filed April 3, 2003

---

This case involves an appeal from a decision of the Claims Commission that resident physicians, as employees of the State, were negligent in the care and treatment of Jessica Carroll, and that such negligence was the proximate cause of her death. The Commissioner assessed fifty-one percent fault against the residents resulting in a judgment against the State of $255,000.00. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J.,W.S., and ALAN E. HIGHERS, J., joined.

Thomas McAlexander, Assistant General Counsel, for the State of Tennessee.

Philip E. Mischke and Scott B. Ostrow, Memphis, Tennessee, for the appellees, James Carroll and Forestine Carroll, for the Use and Benefit of the Estate of Jessica Carroll, a minor deceased.

### OPINION

This case arises out of the same set of facts as *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000). The facts, as presented in that opinion, are as follows:

> Jessica Renee Carroll, a fourteen-month-old child, died of sepsis[1] and pneumonia on March 23, 1992, while she was a patient at LeBonheur Children's Medical Center (LeBonheur). The previous day, because Jessica was vomiting and running a fever between 100 and 105 degrees, her mother, Forestine Carroll,

---

[1]The evidence in this case indicates that sepsis is a bacterial infection. External symptoms of sepsis include fever, hyperventilation, skin rash, and decreased urine output. Blood cultures of individuals infected with sepsis may reveal the presence of bacteria or a low white blood cell count. Once a diagnosis of sepsis is suspected, it is generally recommended that intravenous antibiotic therapy be initiated as quickly as possible. In addition, administration of intravenous fluids is used to complement the antibiotic treatment.

contacted Dr. Carolyn Whitney, Jessica's pediatrician. Later that day, Jessica's temperature began to fall and her vomiting ceased. Although Dr. Whitney agreed to see Jessica in her office the next day, she advised Mrs. Carroll to take Jessica to the emergency room if Jessica began having more problems with her temperature or vomiting.

When Dr. Whitney examined Jessica the next day, March 23, 1992, she found her to be nonresponsive with a low white blood cell count although she had only a slight fever. In addition, Dr. Whitney diagnosed Jessica as suffering from tonsillitis, a heart murmur, and dehydration. Jessica was admitted to LeBonheur, and Dr. Whitney ordered that she be administered antibiotics and intravenous fluids. Although Dr. Whitney did not include information concerning Jessica's low white blood cell count in her admission orders, she did direct that a complete blood count be performed.

At LeBonheur, Jessica was examined at approximately 1:00 p.m. by Dr. Reggie Lyell and Dr. Azra Sehic, University of Tennessee resident physicians. Dr. Lyell was a first-year resident physician, and Dr. Sehic was the supervising resident. Dr. Sehic was concerned that Jessica might be suffering from pneumonia with possible sepsis, and she ordered blood tests to be conducted. Dr. Lyell called and notified Dr. Whitney that Jessica's condition was stable. Both Dr. Lyell and Dr. Sehic were aware of the treatment ordered by Dr. Whitney, and Dr. Sehic later conceded that antibiotics, once recommended, should be administered within thirty minutes.

Around 3:30 p.m., Dr. Lyell was notified that the tests performed on Jessica's blood revealed the presence of bacteria in her blood. Dr. Lyell then contacted Dr. Sehic to inform her of the results. Although more than two and one-half hours had passed since the initial examination of Jessica at LeBonheur, Jessica still had not received the antibiotics and intravenous fluids ordered by Dr. Whitney. Dr. Sehic again examined Jessica and concluded that she needed to receive intravenous fluids and should be transferred to the intensive care unit. Shortly thereafter, Jessica suffered a seizure and lapsed into unconsciousness that lasted until her death around 6:30 p.m. The cause of Jessica's death was ultimately determined to be pneumonia and sepsis.

After Jessica's death [the Carrolls] brought a medical malpractice action against . . . Dr. Sehic and Dr. Lyell (the residents). The residents filed a motion to dismiss arguing that, as state employees, they were immune from suit pursuant to Tennessee Code Annotated section 9-8-307. The trial court granted the motion. . . .
The plaintiffs then . . . filed a claim against the State of Tennessee in the Claims Commission for the actions of the residents.

*Carroll*, 29 S.W.3d at 15-16.

At the conclusion of the Claims Commission trial, the Claims Commissioner returned a verdict in the Carrolls' favor, awarding damages in the amount of $500,000.[2] The Commissioner assessed fault as follows: fifty-one percent (51%) to the residents, sixteen percent (16%) to LeBonheur, and thirty-three percent (33%) to Dr. Whitney. The Claims Commission subsequently entered a judgment against the State for $255,000.00, this figure representing fifty-one percent (51%) of the total award. The State then perfected this appeal.

## *Issue*

The State frames the issue as follows:

> Whether the Claims Commissioner properly determined that any alleged negligence on the part of the residents employed by the State of Tennessee proximately resulted in Jessica Carroll suffering injuries which would not have otherwise occurred?

## *Standard of Review*

Our standard of review of the findings of fact by the Commissioner is established by Rule 13(d) of the Tennessee Rules of Appellate Procedure providing: "Unless otherwise required by statute, review of the findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). "No presumption of correctness attaches to the trial court's conclusions of law." **Tenn. Farmers Mut. Ins. Co. v. Moore**, 958 S.W.2d 759, 763 (Tenn. Ct. App. 1997).

## *The Proof*

Causation questions are "fact-sensitive" and must be determined "in light of logic, common sense, policy, and precedent." **Burgess v. Harley**, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996). Further, it has been held that unless undisputed facts permit a reasonable person to reach only one conclusion, the issue of causation must be resolved by the finder of fact. **McClenahan v. Cooley**, 806 S.W.2d 767, 775 (Tenn. 1991). For the following reasons we conclude Appellees have met their burden on the issue of causation.

---

[2] The Commissioner's award was within that authorized by the then applicable version of Tenn. Code Ann. § 9-8-307(e) which provided that "[f]or causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence." Tenn. Code Ann. § 9-8-307(e) (1992). These statutory maximums are still in effect, having not changed since 1992.

Expert opinion testimony is generally required to prove causation in a medical malpractice action. ***Doland v. Cunningham***, 648 S.W.2d 652, 654 (Tenn. App. 1982). "Expert testimony is required in medical malpractice cases to assist and to educate the trier of fact unless the alleged malpractice lies within the common knowledge of lay persons." ***Seavers v. Methodist Med. Ctr.***, 9 S.W.3d 86, 92 (Tenn. 1999) (citing ***Baldwin v. Knight***, 569 S.W.2d 450, 456 (Tenn. 1978)). In this case, both sides presented conflicting expert testimony before the Commissioner. Our supreme court has held that when the testimony of medical expert witnesses conflicts, the trier of fact "should be left free to adopt that view which is most consistent with reason and justice." ***Martin Bros. Container and Timber Corp. v. Lynch***, 551 S.W.2d 687, 690 (Tenn. 1977) (quoting ***Graybeal v. Smith***, 225 S.W.2d 556 (Tenn. 1949)). In the present case, the record reflects that the learned Commissioner adopted that view.

The Appellees presented Dr. Shapiro as an expert witness. The Commissioner specifically found "that Dr. Shapiro's opinion is that most closely-related to the factual situation found by the Commissioner." "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." ***Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.***, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility are accorded deference by this Court. ***Id.***; ***Davis v. Liberty Mut. Ins. Co.***, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." ***Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999). This Court has held that trial courts are in a superior position to judge the credibility of witnesses. ***Royal Ins. Co. v. Alliance Ins. Co.***, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985); ***Duncan v. Duncan***, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984). Accordingly, great weight is given to the trial court's findings of fact which are made after viewing the demeanor of the witnesses and resolving the conflicts or discrepancies in their testimony. ***Rhea v. Meadowview Elderly Apts Ltd.***, 676 S.W.2d 94, 95-96 (Tenn. Ct. App. 1984).

"[E]ach commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the ***acts or omissions*** of 'state employees[]'" including claims asserting "medical malpractice by a state employee. . . ." Tenn. Code Ann. § 9-8-307(a)(1) and (a)(1)(D) (Supp. 2002). At the conclusion of the proof the Commissioner rendered an oral opinion from the bench that was transcribed and incorporated by reference into the final order. The Commissioner noted that Dr. Shapiro's testimony was that, in his opinion, Jessica would have survived had timely administration of IV fluids and antibiotics been given. In addition to specifically crediting Dr. Shapiro's testimony that Jessica would have survived if the proper course of treatment had been followed, the chancellor also found that

> [a]lthough . . . errors were committed by Dr. Whitney and also be [sic] LeBonheur personnel, ***the Commission believes that the critical issue is the intervening failure of the defendant's residents*** who were present on the floor with Jessica at her bedside to timely notify Dr. Whitney that her orders had not been filled for IV fluids and antibiotics. (Emphasis added.)

A negligent act or omission must have been a substantial factor in bringing about the injury in order to be a proximate cause of that injury. *Boling v. Tennessee State Bank*, 890 S.W.2d 32, 36 (Tenn. 1994). More than one negligent act or omission may be the proximate cause of an injury. *Kelley v. Johnson*, 796 S.W.2d 155, 159 (Tenn. Ct. App. 1990). Accordingly, a negligent act or omission may be a proximate cause of an injury although it is not the singular cause of the injury. *Lancaster v. Montesi*, 390 S.W.2d 217, 221 (1965). Additionally, all parties whose negligence is a proximate cause of an injury may be liable for the injury. *McClenahan v. Cooley*, 806 S.W.2d at 775.

After hearing and considering the expert testimony the Commissioner found that, absent the residents' failure to timely notify Dr. Whitney that her orders had not been complied with, Jessica would have survived. In other words, the Commissioner found the inaction of the residents to be a proximate cause of Jessica's death. After a thorough review of the record we conclude that the evidence does not preponderate against this finding.

### *Conclusion*

We are unable to find that the evidence preponderates against the Commissioner's findings and the judgment is accordingly affirmed. The costs of this appeal are taxed to the Appellant, the State of Tennessee.

_____
DAVID R. FARMER, JUDGE