IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2024 Session

IN RE ESTATE OF BRUCE HURLEY

Appeal from the Chancery Court for Hawkins County
No. 2021-PR-20      Douglas T. Jenkins, Chancellor

_____

No. E2023-01460-COA-R3-CV
_____

A decedent's former employee filed a petition to dissent from the decedent's last will and testament and sought a declaration that she is the decedent's widow. Following a trial, the court dismissed the petition on the basis that the evidence rebutted the presumption of a valid marriage between the decedent and the former employee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Joseph Paul Weyant, Nashville, Tennessee, for the appellant, Sherry Lee Gilliam.

D. Scott Hurley and Ryan N. Shamblin, Knoxville, Tennessee, for the appellee, Pamela Hurley.

OPINION

I.      BACKGROUND

Bruce Hurley, a resident of Hawkins County ("Decedent"), died at the age of 86 on November 4, 2020. His only daughter, Pamela Hurley ("Daughter"), in her capacity as executor of his estate, filed a petition to probate Decedent's will on February 8, 2021. The will was dated March 26, 1991, and designated Daughter as the sole beneficiary of his estate. The Hawkins County Chancery Court ("trial court") admitted Decedent's will to probate that same day. Daughter assisted her father daily with business and personal matters.

Appellant Sherry Lee Gilliam was Decedent's employee beginning in 2009 and was thirty-seven years his junior. Decedent and Daughter terminated Appellant's employment in 2016, citing check forgery and misappropriation of business funds as the reasons. On February 29, 2021, Appellant filed a petition to dissent from Decedent's last will and testament and attached a marriage certificate as an exhibit to her petition. In her petition, Appellant asserted that she is Decedent's surviving spouse "solemnized by marriage in Greene County, Tennessee on 8 January 2010," and sought a declaration that she is his widow. Appellant further sought an award of half of Decedent's net estate, a year's support, assignment of homestead, and exempt property as his alleged widow. Daughter objected to the claim, denied the validity of the marriage certificate, and asserted that the petition should be dismissed because Decedent was never married to Appellant.

The case proceeded through discovery. On November 23, 2021, the trial court entered an agreed order on Daughter's previously filed motion to compel discovery and a protective order concerning Appellant's Facebook account. Through said order, the parties agreed that Appellant would make any and all Facebook accounts available to the estate for inspection, downloading, and copying. The protective order was intended to prevent the deletion of Appellant's Facebook messages. Believing that Appellant failed to adhere to the protective order, on April 5, 2023, Daughter moved for sanctions—including dismissal of Appellant's petition and attorney fees—for spoliation of evidence and violation of the order.

Daughter's motion for sanctions proceeded to a June 7, 2023 hearing, at which Appellant admitted the intentional deletion of over 1,100 Facebook messages which she knew were properly requested through discovery. Appellant related that she "absolutely" knew that the Facebook messages were the subject of the court's protective order at the time she deleted them. She explained that she served as an informant for various law enforcement agencies. She further explained that, using the "unsend" feature, she purposefully deleted the messages in a manner that would make the messages unrecoverable for fear that such communications between herself, law enforcement, and criminals would be discovered. Appellant agreed that during the years she was Decedent's employee she learned that he had a sizeable estate. She maintained that none of the deleted messages were about her alleged marriage to Decedent. The trial court took the issue under advisement pending trial on Appellant's petition.

On July 7, 2023, the case proceeded to trial on Appellant's petition. The trial centered on the issue of the purported marriage's validity. Appellant recounted that, on January 7, 2010, while listening to the police scanner, she learned that Decedent was in a serious vehicle accident. She then went to the scene of the accident and followed Decedent as he was transported to Holston Valley Medical Center in Kingsport, Tennessee. Appellant testified that she remained at the hospital for "maybe two hours," after which she and Decedent drove to a Kentucky Fried Chicken and, while eating in the car, decided to get married to each other. According to Appellant, Decedent was worried about

Daughter placing him in a nursing home so, at his suggestion, they drove thirty minutes to neighboring Greene County to get married with the intention of keeping the marriage a secret. At the time, Appellant was Decedent's employee and knew he was ill with cancer. In her testimony, Appellant agreed that Decedent was a savvy businessman who was tight with his money and who sought advice from attorneys from time to time.

Appellant did not know why she had sworn that she and Decedent were married on January 8, 2010, as opposed to January 7, in both her petition to dissent and in her previous deposition. When asked to state exactly when she and Decedent were married, Appellant responded:

> Is it – listen, this is the way it goes right here. You all are able to trip me up in any way possible because I'm not all here, okay? Literally, I've had car – a bad car wreck. All right. And before that I've been on drugs, okay? So I forget and I forget a lot but at the end of the day me and [Decedent] were married. That's all I can tell you for sure.

Appellant affirmed that she had previously pled guilty to a crime of dishonesty, namely, shoplifting. Additional evidence presented established that: Appellant did not change her surname from that of her former husband; did not tell her three daughters of the alleged marriage to Decedent; she and Decedent never held themselves out as husband and wife; neither party claimed a marital status for tax purposes; Appellant claimed to be single when applying for "food stamps" after the year 2010; Decedent claimed to be single on various healthcare documents; Appellant and Decedent lived separately throughout the duration of the alleged marriage; they pursued other people; they did not exchange rings; and other persons were not informed of their marital status. Further, Appellant did not visit or send a card to Decedent when he was hospitalized for a "long time" following another car accident in 2020. Indeed, when asked why she reported herself as single on various governmental forms Appellant responded, "that's just the way I thought of myself." In 2016, Daughter and Decedent terminated Appellant's employment and Appellant was evicted from the apartment that Decedent allowed her to live in for free. She did not inform anyone about her alleged marriage to Decedent during these events.

Appellant presented a marriage certificate, filed in Greene County, in support of her claimed marital status. She presented testimony from the County Clerk of Greene County who explained the general procedure for obtaining a certificate of marriage.[1] A former Greene County Deputy Clerk, who allegedly officiated the marriage ceremony and whose name appears signed and printed on Appellant's proffered Greene County marriage license and certificate of marriage, also testified. The former deputy clerk related that several months before trial Appellant appeared unannounced to her residence and frantically asked

---

[1] This witness did not work in the Clerk's office at the time of the alleged marriage.

for her help in this litigation. Since that time, the two women had become friends, had seen each other in the days before trial, and had communicated during the trial despite the invocation of "the Rule."[2] The former deputy clerk testified that she did not remember Appellant when she showed up to her home, could not explain why there were inconsistencies in the documents Appellant presented at trial, and implied that she officiated so many marriages that she could not possibly remember Appellant's marriage to Decedent.

In turn, the estate presented expert testimony from Dr. Larry Miller. Dr. Miller earned a bachelor's degree and a master's degree in criminal justice and a Ph.D. in public health and safety, with collaterals in forensic anthropology and criminology. Dr. Miller graduated from the Federal Law Enforcement Training Academy with the U.S. Secret Service Questioned Document School. He had testified as a handwriting expert more than 200 times. Both in his laboratory report and in his testimony, Dr. Miller opined with detailed explanation why Decedent's signature as applicant on the Greene County marriage record in question was not authentic.

Daughter also testified. From 2009 until his passing, Daughter was Decedent's agent under power of attorney. She maintained that Decedent was in a relationship with another woman, not Appellant, at the time of his death. Daughter stated that she never threatened to place Decedent in a nursing home. Daughter explained that she did not know Appellant before 2010 and came to know her because she reached out to Daughter with an offer to help with Decedent's care after he was diagnosed with lymphoma. Daughter affirmed that Appellant did not contact Decedent during the final months of his life.

Following trial, the court issued its ruling from the bench. The trial court found that the marriage certificate entered into evidence created a rebuttable presumption of a valid marriage. The trial court found that Appellant's credibility was somewhat damaged because of her history. The court noted that the former deputy clerk's testimony was not helpful because she did not remember any relevant facts, and that the deputy clerk had testified "to clear her own name." The court also noted the "suspicious circumstance" that Appellant and the deputy clerk whom she called as a witness had been in constant communication leading up to and even during the trial. In considering all of the testimony, the court found "that there is no ring or indicia of a valid marriage."

The trial court's ruling was incorporated into its order entered August 2, 2023 in which the court held:

(1) That although regularly solemnized marriages are presumed to be valid, [Appellant's] testimony lacked credibility.

---

[2] The trial court allowed the deputy clerk's testimony over the estate's objection.

(2) The opinion testimony of Dr. Larry Miller, a forensic document examiner, with impeccable credentials and experience, made perfect sense and was highly credible.

(3) That there were unexplained issues in the paperwork relied upon by [Appellant] involving conflicting dates and differences between documents produced in discovery and at trial.

(4) Any presumption of a valid marriage raised by [Appellant's] proof, including [the] Marriage License, Tennessee Department of Health Certificate of Marriage, Greene County Marriage Certificate, and Marriage Record (Trial Exhibit 2) has been rebutted by clear, cogent, and convincing evidence that no marriage took place between [Appellant] and [Decedent].

Therefore, the court found that no marriage took place between Appellant and Decedent, declared the marriage documents recorded in the Greene County Clerk's Office to be invalid and of no legal effect, and dismissed Appellant's petition to dissent from Decedent's last will and testament.

In the alternative, the court ruled that dismissal of the action was also warranted based upon Appellant's blatant spoliation of the evidence in violation of the court's protective order. The trial court found that Appellant's intentional deletion of so many Facebook messages raised a rebuttable presumption that the evidence contained in those messages would have been unfavorable to her case. The court certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

On August 24, 2023, Appellant moved the trial court for an interlocutory appeal under Tennessee Rule of Appellate Procedure 9. Daughter responded in opposition. Following a September 6 hearing[3] on Appellant's motion and on Daughter's motion for discretionary costs, the court entered an amended final order on October 3, 2023, finding that all issues had not been resolved by the prior order. In addition to its previous findings, the court addressed the sealing of the case record, set aside as moot a previous order for Daughter to file an inventory and accounting, and denied Daughter's request for attorney fees and additional sanctions. Appellant filed her notice of appeal on October 16, 2023.

## II.    ISSUES

We restate the issues on appeal as follows:

---

[3] There is no transcript of the September 6, 2023 hearing.

A. Whether the appeal should be dismissed as untimely.

B. Whether the trial court erred in dismissing Appellant's petition on the basis that the evidence rebutted the presumption of a valid marriage between Appellant and Decedent.

C. Whether the trial court erred in its alternative holding that Appellant's petition was subject to dismissal as a sanction for her intentional spoliation of evidence in violation of a discovery order.

## III.  STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).  "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect."  *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).  This is because the trial court alone had the opportunity to observe the appearance and demeanor of the witnesses.  *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985).

## IV.  DISCUSSION

### A.

In the posture of Appellee, Daughter argues that this appeal should be dismissed as untimely.  Appellant filed her notice of appeal on October 16, 2023.  "In an appeal as of right to the . . . Court of Appeals . . . the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from."  Tenn. R. App. P. 4(a).  Daughter states that the trial court's August 2, 2023 order, not the amended final order dated October 3, 2023, commenced the running of Appellant's deadline to file a notice of appeal.  Both orders were certified as final judgments under Tennessee Rule of Civil Procedure 54.02.  The amended order entered on

October 3 stated that it "shall replace and supersede the prior Order . . . entered August 2, 2023" and referenced "substantive rights and obligations newly addressed in this amended order." Rule 54.02, which provides a means by which a trial court may certify that a judgment resolving fewer than all the claims is final and appealable pursuant to Tennessee Rule of Appellate Procedure 3(a),[4] provides as follows:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02. "An order made final pursuant to Tenn. R. Civ. P. 54.02 must be dispositive of an entire claim or party." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 558 (Tenn. 1990). As this Court has previously explained,

> Because Rule 54.02 provides that a trial court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties, the order certified as final must be dispositive of an entire claim or a party. In other words, the order at issue must dispose of at least one entire claim or resolve all of the claims against at least one party. The purpose of the certification rule is to enhance judicial economy and to prevent piecemeal appeals in cases which should be reviewed only as single units.

*E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.*, No. M2017-00732-COA-R3-CV, 2018 WL 1831116, at *3 (Tenn. Ct. App. Apr. 17, 2018) (internal quotations and citations omitted). Here, Daughter's motion for sanctions which was still pending at the time of trial included a request for dismissal of Appellant's petition as well as "other sanctions,"

---

[4] "In civil actions every final judgment entered by a trial court from which an appeal lies to the . . . Court of Appeals is appealable as of right. Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties."

including costs and attorney fees. Daughter's request for attorney fees, as well as Daughter's obligation to file an inventory and accounting, and the outstanding issue of sealing the record were not addressed in the first order entered August 2, 2023. "This Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final." *City of Jackson v. Hersh,* No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *4 (Tenn. Ct. App. Aug. 25, 2009); *see also Grand Valley Lakes Prop. Owners' Ass'n, Inc. v. Gunn*, W2008-01116-COA-R3-CV, 2009 WL 981697, at *3 (Tenn. Ct. App. Apr. 13, 2009) (unresolved motion for attorney fees meant that order being appealed was not final). Because the August 2 order did not resolve the outstanding claim for attorney fees against Appellant, we conclude that it was prematurely certified as final, did not adjudicate all the rights and liabilities of the parties, was subject to revision, and was not the final order in this action. Appellant timely appealed from the amended final order entered October 3, 2023.

B.

On appeal, Appellant asserts that the trial court erred in dismissing her petition to dissent from Decedent's last will and testament and in declaring her claimed marriage to Decedent invalid. She maintains that her evidence, namely, the Greene County marriage certificate, the witness testimony she presented at trial, along with the presumption of a valid marriage based upon the certificate, was sufficient to establish her claim as the surviving spouse. Daughter responds that the trial court correctly found that any presumption of a valid marriage was rebutted by clear, cogent, and convincing evidence that no marriage took place between Claimant and Decedent.

The law of marriage in Tennessee is governed by statute. Tenn. Code Ann. § 36-3-101–36-3-701. "These statutes govern who may marry, the necessity of a license to effect a marriage, what the license must reveal, what persons may solemnize a marriage, the duties imposed upon the person who performs the ceremony, and every aspect of the procedure that must be followed in order to become married in this state." *Moore v. Moore*, 1986 WL 8426, at *2 (Tenn. Ct. App. Aug. 4, 1986). Obtaining a marriage license is a requirement before the solemnization of a valid marriage. Tenn. Code Ann. § 36-3-103(a). Individuals seeking to marry must apply for the marriage license, and section 36-3-104 details the requirements for a marriage license application. Among other things, the application must state "the names, ages, current addresses and social security numbers of both of the proposed contracting parties" and "[t]he application must be sworn to by both applicants." Tenn. Code Ann. § 36-3-104(a).

"While a regularly solemnized marriage is presumed valid, that presumption is rebuttable upon presentation of 'cogent and convincing evidence' otherwise." *In re Estate of Smallman*, 398 S.W.3d 134, 155 (Tenn. 2013) (quoting *Guzman v. Alvares*, 205 S.W.3d

375, 380 (Tenn. 2006)). The "cogent and convincing" standard of proof and the "clear and convincing" standard are the same. *Id*. "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). In this case, Daughter presented evidence in the form of an expert's testimony and report that the marriage license application—a document entitled Marriage Record Greene County, Tennessee—naming as applicants Decedent and Appellant does not contain Decedent's authentic signature and thus calls into question whether Decedent truly made a sworn application to obtain a marriage license which is a precondition to being joined in a legal marriage.

Both in his laboratory report and in his testimony, handwriting expert Dr. Miller explained at length how he evaluated the document in question, how he found significant dissimilarities between Decedent's known signatures and the signature appearing on the disputed document, and why he ultimately concluded that Decedent's signature as applicant was not authentic. Dr. Miller's testimony is unrebutted in the record. The trial court found his credentials to be impeccable and his testimony to be highly credible. By contrast, the court found that Appellant's testimony lacked credibility. Here, we must give great weight to the above findings because:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony. Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary.

*Morrison*, 338 S.W.3d at 426 (internal citations omitted). Simply put, the record does not contain clear and convincing evidence by which we could overturn the trial court's credibility findings. Indeed, Appellant could not state the date of her purported ten-year secret marriage, stated that she thought of herself as single, cited a faulty memory due to previous drug use when asked certain questions while being sure in her answers to other questions, and presented, without any corroborating witnesses, a story of how she and Decedent became married that is, respectfully, implausible. We credit the trial court's finding that Appellant's own testimony about her interactions with Decedent after their alleged marriage "fly in the face of the existence of a valid marriage." Moreover, having studied the record, we credit the trial court's finding that unexplained issues remain in the Greene County marriage documents that Appellant relied upon in support of her claim. These issues were not resolved by the testimony of the former deputy clerk who was called as a witness for Appellant because her testimony is best summarized as, "I do not remember."

Here, we discern that the trial court carefully weighed the proffered exhibits and the evidence adduced at trial and found many facts that undermined the existence of the purported marriage between Appellant and Decedent. Upon review, we affirm the trial court's conclusion that the presumption of a valid marriage between Appellant and Decedent has been rebutted by clear and convincing evidence. Therefore, Appellant's petition to dissent from Decedent's last will and testament was properly dismissed and we affirm the trial court's October 3, 2023 order. Our holding is dispositive of the appeal and pretermits discussion of the second issue raised by Appellant.

## V.     CONCLUSION

For the foregoing reasons, we affirm the judgment of the chancery court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Sherry Lee Gilliam.

_____
JOHN W. McCLARTY, JUDGE