**RESERVE INSURANCE COMPANY,**
**Appellant,**

v.

**BROKERAGE SURPLUS**
**CORPORATION,**
**Appellee.**

**No. 77–1432.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 5, 1977.

Decided Feb. 13, 1978.

James M. Marsh, LaBrum & Doak, Andrew C. Hecker, Jr., Philadelphia, Pa., for appellant.

Allan Maitlin, Fuerstein, Sachs & Maitlin, West Orange, N. J., for appellee.

Before ALDISERT and WEIS, Circuit Judges, and CHRISTENSEN, District Judge.*

## OPINION OF THE COURT

CHRISTENSEN, District Judge.

Irrespective of whether the loss for which the insurance company in this case sued its agent involved no negligence on the part of the latter, as we are inclined to believe, or was not the proximate result of the agent's negligence, as the district court held, it is clear that no liability attached. We, therefore, affirm the judgment denying recovery.

The case was submitted to the district court on an agreed statement of facts. Reserve Insurance Company (Reserve), plaintiff below and appellant here, as an insurer with its principal office and place of business in Chicago, Illinois. It was authorized to write surplus lines insurance coverage in accordance with New Jersey law. The defendant-appellee, Brokerage Surplus Corporation (Brokerage), with its office in Short Hills, New Jersey, is an insurance agency licensed under the laws of New Jersey, with authority to issue policies and bind risks on behalf of Reserve.

Harbor Laundry Service, Inc. (Harbor Laundry), conducting a commercial laundry business in Camden, New Jersey, obtained through its broker-agent, Insurance Management Associates (I.M.A.), from Brokerage as writing agent for Reserve an insurance policy bearing an effective date of August 8, 1974, for a three year period. This policy provided fire insurance coverage of Harbor Laundry's building in the amount of $150,000, its personal property in the amount of $232,000, business interruption insurance of $155,000, and bailee customer floater protection of the owners of goods on the laundry's premises in the amount of $75,000.

Being advised of the issuance by Brokerage of the Harbor Laundry policy, Reserve informed Brokerage that it was not authorized to issue the bailee floater coverage and consequently requested Brokerage to return the Harbor policy for cancellation or delete the floater as soon as possible.[1] This letter was received by Brokerage on August 23, 1974. Thereafter, Brokerage issued in the name of Harbor Laundry as insured another policy on behalf of Horace Mann Insurance Company, which it also represented as writing agent. The latter policy had an identical effective date of August 8, 1974, and insured Harbor against the same risks and in the same amounts covered by the Reserve policy. It was the intention of Brokerage in so doing to replace the Reserve policy with the Horace Mann policy.

---

* Honorable A. Sherman Christensen, of the United States District Court for the District of Utah, sitting by designation.

1. The body of the letter of instruction, with reference to the policy in question, read:

    I'm afraid we have one essential problem with this risk. We are not presently filed to provide the Bailee floater you have attached.

    This must be obtained from a company and has Inland Marine facilities; I am afraid we do not. Please return the policy for cancellation or delete the Floater as soon as possible.

    If we are to remain on the risk, minus the Bailee coverage of course, we will be most anxious to receive an inspection due to the nature of the risk.

On September 5, 1974, Brokerage mailed the Horace Mann policy to I.M.A. with the request that the Reserve policy be returned for cancellation.

The intervening coincidence which also occurred on September 5, 1974, and which precipitated this law suit was a fire on the premises of Harbor Laundry causing extensive damage to the laundry building and its contents.

Although it was stipulated that Brokerage did not notify Harbor Laundry Service of the cancellation of Reserve's policy, or the issuance of the Horace Mann policy, prior to September 5, 1974, there is a dispute between the parties, not resolved by the stipulation, as to whether such notification was made by Brokerage prior to its being advised of the fire. The trial court inferred that it was after Brokerage was notified of the fire loss that it sent the Horace Mann policy to the agent of the insured with instructions to return the Reserve policy for cancellation. We do not question this finding.

Following the loss, Brokerage assigned General Adjustment Bureau to adjust the loss on behalf of Horace Mann. No action was taken at that time for the involvement of Reserve in the adjustment. On October 17, however, Reserve was put on notice of the loss by adjusters, who raised the question of whether Reserve should not participate in the loss. Reserve took the position that it was not liable because its policy had been replaced by the Horace Mann policy.

On December 27, the Laundry company instituted suit against both Horace Mann and Reserve for the recovery of its losses. The case was settled on March 13, 1975, each of the insurance companies agreeing to pay $266,507. Settlement thus was made for the total loss with costs in the amount of $533,014, including, of course, the amount of the bailee floater coverage in full.

Reserve then brought the present action to recover from Brokerage the $266,507 which it had paid to Harbor Laundry. Its contention was that it had been obliged to contribute to a settlement of the laundry loss as a result of the negligence of the defendant in failing to effect a cancellation of the Reserve policy as directed, and more particularly that, having undertaken to cancel the Reserve policy by substitution, Brokerage had been negligent in failing to obtain consent from the insured for the substitution and a return of its policy. Brokerage defended primarily on the ground that it had in fact cancelled the Reserve policy by substituting the Horace Mann policy in consequence of which Reserve had not been legally obligated to pay any part of the loss to Harbor Laundry. It also maintained that it had acted reasonably and was guilty of no negligence.

The trial court properly held that in the absence of consent of the insured, special authority, waiver or ratification, none of which was shown in this case, an agent representing the insurer as well as another insurance company could not transfer the risk unless substitution of a new policy for the existing policy has been approved by the insured. Thus it concluded that the Reserve policy had not been effectively cancelled before the fire occurred. The trial court further held, nonetheless, that the negligence of Brokerage was not the proximate cause of plaintiff's loss, in view of a regulation promulgated by the New Jersey Commissioner of Banking and Insurance providing that fire insurance policies may not be cancelled except upon thirty days written notice to the insured.[2]

2. However, although defendant may have been negligent in its attempted cancellation of the Reserve policy, the question still remains as to whether its action was the proximate cause of the plaintiff's loss. . . .

Defendant received the instruction to cancel the policy on August 23. The fire occurred on September 5, some 13 days after receipt of notification to cancel. Had defendant given Harbor notice on August 23, the policy would have remained effective on the day of the fire, unless the insured had done something to nullify the 30 day waiting period. . . .

It thus appears that although the defendant was negligent his (sic) negligence was not the proximate cause of plaintiff's loss. During the 30 day period, the risk by loss remained with

The insurance company argues on this appeal that denial of liability was based upon a false premise: The thirty day notice of cancellation directive did not forbid cancellation by substitution and mutual consent. Brokerage did not attempt to cancel by a written notice that could have been effective only after thirty days but undertook to cancel by substituting a new policy within that time. After undertaking to do so, Reserve contends, Brokerage negligently failed to consummate the cancellation by obtaining the consent of the insured to the substitution.

A possible gap in the reasoning of the trial court, and the attempts of Reserve, however persuasive, to capitalize upon it, should not obscure the fundamental equity of Brokerage's position here. Had the latter done nothing in response to Reserve's instructions to effect deletion of the bailee floater provision or cancel the policy, a good case could have been made under the circumstances of this case for limiting any liability of the agent to the maximum bailee floater coverage of $75,000. That Brokerage did not remain idle pending the fire but took action which in retrospect can be seen as having saved Brokerage far more than the amount of the bailee floater coverage hardly justifies its being placed in a position worse than if it had done nothing. It is obvious that before the loss Reserve's paramount interest was to delete the bailee coverage rather than to completely avoid carrying the risk which it was in the business of carrying. Having left the selection of the alternative to the agent in the first instance, it does not seem right that Reserve following the fire should be able to choose the other alternative providing maximum benefit for itself.

It must be recognized, however, that the trial court's formulation leaves questions open. While negligence was found in general terms, or at least assumed to have been present, the precise nature of that negligence is unclear. Reference was made in general terms to the attempt of Brokerage to effect cancellation by substitution rather than by notice and it was held in effect that those efforts were ineffective by reason of failure of Brokerage to obtain consent or ratification from the insured to the substitution. The court in reciting later that the agent "may have been negligent in its attempted cancellation" and that "it appears . . . the defendant was negligent," did not specify of what the negligence consisted.

If the findings are interpreted, as Reserve would have us do, as a determination that Brokerage, having undertaken to cancel the policy by substitution, had the duty to employ reasonable means to obtain the assured's consent, denial of liability by reason of the thirty day notice requirement would be in the nature of a *non sequitur*. Yet it is not entirely clear that the trial court regarded the failure to obtain consent as the gist of the negligence it perceived. Another view of the language it used could be that, there being no proof that such consent reasonably could have been obtained forthwith, a duty existed on the part of Brokerage at least to start the thirty day period running by giving notice without delay. This would be consistent with the trial court's holding that the failure to do so would not result in actionable damage since the fire occurred within thirty days of the receipt by Brokerage of Reserve's instructions.

Reserve argues that in the absence of proof that "cancellation could not have been effected" through the obtaining of consent within time to preclude Reserve's liability for loss, Brokerage would be legally responsible. On the contrary, however, it was Reserve's burden to establish that such consent would have been obtained within the time involved had Brokerage conducted itself with reasonable care and diligence to that end.

One of the difficulties of this case has been the temptation to apply the duty of reasonable care as an afterthought to the circumstance that Brokerage's instruction

the plaintiff and as such Reserve is not entitled to the relief sought.

Memorandum Decision of District Court, App. 93a–94a.

from Reserve was received by it on August 23 and the fire occurred within a short time thereafter. However, the very shortness of that time and the unlikelihood of the occurrence of a fire involving the laundry property within that time, viewed prospectively, only emphasize the error of evaluating duty with the actual occurrence of the fire in retrospection.

We have concluded that the record does not establish any negligence on the part of Brokerage. No more than seven work days intervened between the receipt of instructions by Brokerage and its mailing out of the policy to the agent of the assured to effect the substitution. No one can reasonably suggest that apart from the time involved, the mode of consummating the substitution was unreasonable or otherwise not to be expected. There is nothing in the stipulation, nor in the findings of the court by way of inference, to suggest that the forwarding of the Horace Mann policy to the insured's agent would not have occurred as it did on the 5th of September if there had been no fire.

Reserve failed to produce before the district court evidence indicating either that Brokerage proceeded unreasonably under the circumstances or that, had it proceeded reasonably, consent would have been forthcoming within the time intervening between the receipt of its instructions and the fire. It seeks to avoid confrontation of this problem here by conjuring up a non-existent duty on the part of Brokerage to have cross-appealed in order to enjoy the benefit of this insufficiency of the record.[3]

However, Brokerage is not attacking the judgment below; it had no reason to do so. The judgment was simply one "in favor of defendant, Brokerage Surplus Corporation, and against the plaintiff, Reserve Insurance Company, of no cause of action." It is seeking to sustain that judgment and accordingly there was no need for a cross-appeal. The pertinent distinction has been covered by Professor Moore by the following language:

If the appellee wishes to secure alteration or modification of the judgment, he must take his own appeal (i. e. he must cross-appeal); on the other hand, with the exception to be noted [not applicable to this case], if the appellee is fully satisfied with the judgment actually rendered, he need not take his own appeal, even though he wishes to argue on appeal, in support of the judgment, that the district court erred with respect to particular rulings or the reasons for the judgment. [Citing by footnote *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); *Anderson v. Atherton,* 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500 (1937); *Jaffke v. Dunham,* 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1956); *Cooke v. Hirschberg,* 258 F.2d 56 (2 Cir. 1958).]

9 Moore's Practice (2d ed.) ¶ 204.11(3).

Nor does the clearly erroneous rule preclude the view we have taken concerning the insufficiency of the proof of negligence, even though the decision of the district court were interpreted as a finding of negligence on the part of Brokerage for failure to consummate the substitution of policies before the fire, the case having been submitted upon a written stipulation of facts. *Mobil Tankers Co. F.A. v. Mene Grande Oil Co.,* 363 F.2d 611, 613 (3 Cir. 1966), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225; *State of Maryland for the Use of Levin v. U. S.,* 329 F.2d 722, 723 (3 Cir. 1964), aff'd without consideration of the question, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205; *Goldberg v. P. & L. Equipment Co.,* 311 F.2d 88, 89 (5th Cir. 1962); *Pflugradt v. U. S.,* 310 F.2d 412, 415 (8th Cir. 1962). See also *U. S. v. Mississippi Valley Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961); *In Re Kellett Aircraft Corp.,* 186 F.2d 197, 200 (3 Cir. 1950).

---

3. In any event, Brokerage's failure to appeal from the judgment of the district court leaves unchallenged Chief Judge Whipple's rulings that (a) Brokerage had not cancelled the Reserve policy as it had been instructed to do and as it had undertaken to do and (b) Brokerage *was* negligent for that reason.

Appellant's brief at 13.

Nothing has been found in New Jersey law at variance with the views we have expressed. Reserve relies upon the principles discussed in *North Western Nat. Ins. Co. v. Albert Robbins, Inc.,* 98 N.J.L. 612, 122 A. 438 (1923). See also, *Halsey v. Adams,* 64 N.J.L. 724, 46 A. 773 (1900), and *Rider v. Lynch,* 42 N.J. 465, 201 A.2d 561 (1964). These cases are distinguishable. Here there was no peremptory order for cancellation, no loss proximately resulting from any proved negligence of Brokerage, and it was stipulated by the parties among other things that I.M.A. to whom Brokerage sent the Horace Mann policy with the request that the Reserve policy be returned was "at all times material hereto" a licensed insurance broker and as such "acted as an agent for Harbor Laundry in servicing Harbor Laundry's insurance needs."

For the reasons stated, the judgment of the district court will be affirmed.