**EF OPERATING CORPORATION, T/A West Motor Freight of PA, Appellant,**

v.

**AMERICAN BUILDINGS \*; Chief Industries; Guile Steel; Inland Buildings; Kabro–Kaiser Associated; M.P. Flaherty Assoc.; S.S. Fisher Steel Corp.; Star Building Systems; United Feeds.**

No. 92–1598.

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1993.

Decided May 10, 1993.

Sur Petition for Rehearing June 3, 1993.

---

\* Dismissed as per Court's 11/9/91 Order.

Joseph T. Bambrick, Jr., (argued) Joseph J. Bambrick, Jr., & Associates, West Reading, PA, for appellant.

Philip W. Fisher, (argued), Fox, Rothschild, O'Brien & Frankel Philadelphia, PA, for appellee M.P. Flaherty Assoc.

Theodore A. Adler, Reager, Selkowitz & Adler P.C., Harrisburg, PA, for appellee S.S. Fisher Steel Corp.

Before: HUTCHINSON, NYGAARD and SEITZ, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The primary issue on appeal is whether under the Interstate Commerce Act, 49 U.S.C. § 10101 et seq., consignees must pay

a common motor carrier for shipment of goods received even though the consignees had paid the shipper-consignor for the freight charges and the carrier delivered the goods under a bill of lading marked "prepaid." The district court concluded that under these circumstances the carrier was precluded from collecting freight charges from the consignees. We will affirm.

### I.

EF Operating Corporation is a common motor carrier which has its tariffs on file with the Interstate Commerce Commission. Tex–Ark Joist Company requested EF Operating to transport shipments of steel joists and attachments from its facilities in Lebanon, Pennsylvania, to various locations in and out of the state. After completing the deliveries, EF Operating asked for payment, but Tex–Ark refused to pay. Later, as a result of a Chapter 11 bankruptcy, Tex–Ark had no money to pay its unsecured creditors, including EF Operating.

EF Operating then requested payment from consignees of Tex–Ark, including S.S. Fisher Steel Corporation and M.P. Flaherty Associates, Inc. When the consignees refused to pay because they had already paid the freight charges to Tex–Ark, EF Operating sued in federal district court under the Interstate Commerce Act. All the consignee-defendants eventually settled, except Fisher and Flaherty.

EF Operating moved for summary judgment, contending that the Interstate Commerce Act required the defendants to pay. Fisher and Flaherty cross-moved for summary judgment, contending that they had already paid the freight charges to Tex–Ark as indicated by "prepaid" marks on the freight bills and delivery tickets attached to the bills of lading. The district court denied EF Operating's motion and granted summary judgment for Fisher and Flaherty. EF Operating appeals.

### II.

Before we reach the merits of the summary judgment, we must confront a jurisdictional matter. Along with its summary judgment motion Flaherty also moved the district court to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court did not explicitly rule on this motion. Instead, it ruled in favor of Flaherty on the merits; at the same time it ruled in favor of another defendant, American Buildings Company, which had raised the same jurisdictional defense. The logical conclusion to be derived from this is that the district court decided against Flaherty on the jurisdictional issue, albeit implicitly.

██ Although EF Operating appeals from the final order granting summary judgment for the appellees, Flaherty did not file a cross-appeal to contest the personal jurisdiction issue. Rather, it contests the issue in response to EF Operating's appeal. Unlike subject matter jurisdiction, which may be raised by any party or court at any time, see Wright & Miller, 5A Federal Practice and Procedure, § 1391 at 764–75 (1990), parties must affirmatively raise a personal jurisdiction defense in a timely manner under Federal Rules of Civil Procedure 12(g) and 12(h)(1), lest it will be deemed waived. *Id.* § 1391 at 741–44; *Myers v. American Dental Ass'n,* 695 F.2d 716, 720 (3d Cir.1982).

██ It is axiomatic that any party contesting an unfavorable order or judgment below must file an appeal. It is also well established that an appellee may, without taking a cross-appeal, support the judgment as entered through any matter appearing in the record, though his argument may attack the lower court's reasoning or bring forth a matter overlooked or ignored by the court. *United States v. American Ry. Express Co.,* 265 U.S. 425, 435–38, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924); *Colautti v. Franklin,* 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 686 n. 16, 58 L.Ed.2d 596 (1979); *Schweiker v. Hogan,* 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982). This is simply a corollary to the rule that a reviewing court may affirm the lower court's decision on any basis. *Erie Telecommunications, Inc. v. City of Erie,* 853 F.2d 1084, 1089 n. 10 (3d Cir.1988); *Johnson v. Orr,* 776 F.2d 75, 83 n. 7 (3d Cir.1985). A grant of summary judgment and a dismissal for lack of personal

jurisdiction, however, are wholly different forms of relief. *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 805 (3d Cir.1981). The latter is a dismissal without prejudice, whereas the former is a ruling on the merits which if affirmed would have preclusive effect. *Id.* By seeking dismissal of the complaint for lack of personal jurisdiction, Flaherty is not seeking to support the summary judgment on different grounds. Cf. *Reserve Ins. Co. v. Brokerage Surplus Corp.*, 570 F.2d 487, 491 (3d Cir.1978); *Bullard v. Sercon Corp.*, 846 F.2d 463, 467–68 (7th Cir. 1988). Rather, it seeks to vacate the summary judgment. *Lucas*, 666 F.2d at 805. Thus, where an appellant files an appeal seeking review of a summary judgment for the appellee, the appellee must cross-appeal to contest the district court's adverse ruling on his motion to dismiss for lack of personal jurisdiction. *Id.* See *Benson v. Armontrout*, 767 F.2d 454, 455 (8th Cir.1985) (appellee must cross-appeal to argue that the district court should have ruled on the merits and dismissed a habeas claim with prejudice where the court denied relief without prejudice). Since Flaherty did not cross-appeal, we have jurisdiction to review the district court's summary judgment ruling only.[1]

### III.

Our review of summary judgment is plenary. *Metzger v. Osbeck*, 841 F.2d 518, 519 (3d Cir.1988). We must consider the facts in light most favorable to the nonmovant and determine whether there is a genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.;* Fed. R.Civ.P. 56(c).

■ Counsel for EF Operating represented in his appellate briefs that the "facts of the present case are not in dispute" and in no less than three places in his appellate briefs stated that the "goods were transported pursuant to a bill of lading marked 'prepaid'." Nonetheless, he attempted to repudiate this at oral argument and contend that only the freight bills and delivery tickets, and not the bills of lading, were marked "prepaid." The significance of this, he contends, is that the bill of lading is the only document controlling the duties and responsibilities of the carrier and shipper, and that since it was not marked "prepaid" the charges cannot be considered so.

Although a review of the bills of lading does support the *factual* assertion made at

---

**1.** We note that in *Lucas* we opined that the requirement of a cross-appeal under Federal Rule of Appellate Procedure 4(a)(3) "has been held to be a rule of practice rather than a limitation on appellate power." 666 F.2d at 805, citing *Scott v. University of Delaware*, 601 F.2d 76, 82–83 (3d Cir.1979). The circuits are split on this issue. *Young Radiator Co. v. Celotex Corp.*, 881 F.2d 1408, 1415–16 (7th Cir.1989).

We believe that current Supreme Court jurisprudence on procedural rules and time requirements seriously undermines the notion that the filing of a cross-appeal is a rule of practice. "Recent Supreme Court decisions have strictly construed the rules of procedure and prescribed time limits." *Smith v. Evans*, 853 F.2d 155, 160 (3d Cir.1988). For example, in *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), the Supreme Court held that an appeal was jurisdictionally defective because a motion under Federal Rule of Civil Procedure 59 was untimely and did not toll the time for filing a notice of appeal. Recently, in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that the requirements of Federal Rules of Appellate Procedure 3 and 4 were mandatory and jurisdictional, and that the failure to name a party in the notice of appeal constituted a jurisdictional bar to appellate review as to that party. In so doing, the Court overruled *Williams v. Frey*, 551 F.2d 932, 934 n. 1 (3d Cir.1977), where this court applied the requirements of Rules 3 and 4 as rules of practice rather than as jurisdictional limitations. 487 U.S. at 314 n. 1, 108 S.Ct. at 2407 n. 1. Although *Torres* concerned the initial notice of appeal by the appellant under Rule 4(a)(1) whereas a cross-appeal by an appellee is invoked under Rule 4(a)(3), this distinction is illusory in light of the broad language the *Torres* Court used. *Id.*, 487 U.S. at 315–18, 108 S.Ct. at 2408–09. Just as other provisions of the federal rules of procedure have been found to be jurisdictional, see, e.g., *Fuente v. Central Elec. Coop., Inc.*, 703 F.2d 63, 65 (3d Cir.1983) (per curiam) (ten day period of Federal Rule of Civil Procedure 59(e) is jurisdictional), there is no reason to believe that the specific time requirement of Rule 4(a)(3) is not jurisdictional. See *Brotherhood of Maintenance of Way Employees v. St. Johnsbury & Lamoille County R.R.*, 806 F.2d 14, 15 (2d Cir.1986); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 239 n. 2 (5th Cir.1990); *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir.1984); *Illinois Bell Tel. Co. v. FCC*, 740 F.2d 465, 477 (7th Cir.1984); *Savage v. Cache Valley Dairy Ass'n*, 737 F.2d 887, 888–89 (10th Cir.1984).

oral argument, counsel for EF Operating did not present this legal argument to the district court. Rather, he moved for summary judgment, specifically asserting both in the district court and in his briefs here that there was no genuine issue of material facts and that the bills of lading were marked "prepaid." Moreover, in both courts he advanced the legal argument that consignees cannot assert equitable defenses such as prepayment to shipper when the carrier has not recovered its freight charges from the shipper-consignor. We see no reason why counsel for EF Operating may make this belated revelation on appeal, at oral argument no less, and thereby repudiate his earlier representations relied upon by the appellees, the district court and this court. Representations made in briefs inform opposing parties and the court of concessions, the specific contentions being raised and the facts and laws relied upon to make them. The smooth, efficient working of the judicial process depends heavily upon the assumption that such representations will be made after careful, deliberate evaluation by skilled attorneys who must ultimately accept responsibility for the consequences of their decisions. It goes without saying that one cannot casually cast aside representations, oral or written, in the course of litigation simply because it is convenient to do so, and under the circumstances here, a reviewing court may properly consider the representations made in the appellate brief to be binding as a form of judicial estoppel, and decline to address a new legal argument based on a later repudiation of those representations. Cf. *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121 (3d Cir.1992).

■■■ The bill of lading operates as both the receipt and the basic transportation contract between the shipper-consignor and the carrier, and its terms and conditions are binding. *Texas & P. Ry. Co. v. Leatherwood*, 250 U.S. 478, 480–83, 39 S.Ct. 517, 518, 63 L.Ed. 1096 (1919); *Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.;* 265 U.S. 59, 67–69, 44 S.Ct. 441, 443, 68 L.Ed. 900 (1924). As a contract, it is subject to general rules of construction under contract law. *Texas & Pacific Ry. Co. v. Reiss*, 183 U.S. 621, 629–31, 22 S.Ct. 253, 257, 46 L.Ed. 358 (1902); *Maggard Truck Line, Inc. v. Deaton, Inc.*, 573 F.Supp. 1388, 1392 (N.D.Ga.1983). And as a contract of adhesion between the carrier and shipper, it is strictly construed against the carrier. *Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co., Ltd.*, 865 F.2d 699, 703 (5th Cir.1989); *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir.1985). The assertion that the bills of lading here were not marked "prepaid" is accurate in only the narrowest sense. While the bills proper were not marked prepaid, they specifically referred to attached delivery tickets, which were clearly marked "prepaid." Moreover, EF Operating later sent to the shipper-consignor Tex–Ark freight bills that were also clearly marked "prepaid." Under these circumstances, the representations made by counsel for EF Operating before the district court and in his appellate briefs are accurate: the facts are not disputed; the bills of lading, as they reference other documents, indicate that the consignees paid the freight charges to Tex–Ark; EF Operating knew and understood that the consignees had paid the charges; and it expected payment from Tex–Ark, and not the consignees.

With that behind us, we consider the primary issue on appeal. EF Operating relies heavily upon *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), to advance the proposition that no equitable defense can stand in the way of a common carrier's right to recover charges due under the applicable tariff. This reliance is misplaced. In *Maislin* the Supreme Court considered the validity of an Interstate Commerce Commission policy that relieved a shipper of the obligation of paying the filed rate when the shipper and carrier have privately negotiated a lower rate. Reasoning that the filed rate is the only legal rate a carrier may charge, a rule commonly known as the "filed rate doctrine," the Court held that a carrier must collect the filed rate, irrespective of the reasonableness of the carrier's practice in deviating from the terms of a private agreement with the shipper. 497 U.S. at 130, 110 S.Ct. at 2768. This rigid and harsh doctrine was

necessary to prevent discriminatory pricing schemes sprung from the practice of intentionally "misquoting" rates to shippers as a means of offering them rebates or discounts. *Id.,* at 127, 110 S.Ct. at 2766. Thus, the Court forbade the assertion of any equitable defenses to the collection of the file tariff, as opposed to some other rate.

Contrary to what EF Operating asserts, the *Maislin* Court did not hold that a carrier must, regardless of the circumstances, receive its freight charges; rather, it held that the rate charged must be the filed rate. This appeal does not concern whether EF Operating is entitled to charge its filed rate instead of some privately negotiated rate, or whether there is some danger of approving unlawful, discriminatory pricing schemes if EF Operating is not allowed to collect its freight charges. The consignees have paid for services rendered, and have paid the proper filed rates. So, the question is not what rates the carrier should charge, but from whom the carrier should seek payment.

■ The shipper-consignor, Tex–Ark in this case, "assumes the obligation to pay the freight charges, and [its] obligation is ordinarily a primary one." *Louisville & Nashville R.R.,* 265 U.S. at 67, 44 S.Ct. at 443. We have held that when a carrier delivers goods under a bill of lading marked "prepaid," and when the consignee pays the shipper-consignor the freight charges under this bill, equitable estoppel precludes the carrier from collecting those charges from the consignee. *Missouri Pacific R.R. Co. v. National Milling Co.,* 409 F.2d 882, 884 (3d Cir.1969). The rationale is simple: if the consignee has performed its purchase agreement in good faith by paying the shipper for freight charges, and if the carrier knows this and acknowledges the payment by marking the bill of lading "prepaid," the carrier is then estopped from forcing an innocent consignee to pay twice for services rendered only once. Other courts have agreed. See *United States v. Mason & Dixon Lines, Inc.,* 222 F.2d 646, 650 (6th Cir.1955); *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 62–63 (7th Cir.1971); *Southern Pacific Transp. Co. v. Campbell Soup Co.,* 455 F.2d 1219, 1222 (8th Cir.1972).

The Supreme Court has also implicitly adopted this reasoning. In *Southern Pacific Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982), the consignor shipped goods to the consignee under bills of lading that provided that the consignor would be primarily liable for freight charges to the carrier, unless the consignor signed a "nonrecourse" clause providing that the "carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." The consignor failed to execute this clause, and when the consignee failed to pay the carrier, the carrier sought payment from the consignor.

Reasoning that the bill of lading is the basic transportation contract between the shipper-consignor and the carrier, the Court held that the consignor was liable for the freight charges because it failed to execute the nonrecourse provision. 456 U.S. at 342, 102 S.Ct. at 1820. It opined that the consignor, being the one who contracts with the carrier to transport goods, is originally and primarily liable for the carrier's charges, unless it is specifically exempted by the bill of lading, or unless the goods are transported under such circumstances as to indicate an exemption for him. *Id.,* quoting *In re Bills of Lading,* 52 I.C.C. 671, 721 (1919).

The Court then distinguished *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56 (7th Cir.1971), and by so doing it sanctioned a situation where a party is exempted under circumstances that suggest an estoppel defense is in order. The Court summarized the facts in *Admiral:*

> The defendant there was a *consignee* to whom goods had been delivered under bills of lading marked "prepaid." Relying upon the carrier's explicit representation of prepayment, the consignee paid the amount of the freight charges to the shipper-consignor. In fact, however, the carrier had extended credit to the consignor and had failed to collect the charges within the period allowed by the regulations. When the consignor went out of business, the carrier turned to the consignee for payment.

456 U.S. at 347, 102 S.Ct. at 1822 (emphasis in original). The Court noted that the consignee in *Admiral* was entitled to an equitable estoppel defense because it had detrimentally relied on the carrier's misrepresentation that the freight charges were "prepaid" and because it had no means to protect itself from freight charge liability. *Id.*, 456 U.S. at 347–49, 102 S.Ct. at 1822–23. Moreover, since the consignee had paid full freight charges to the consignor, the Court recognized that an award of relief to the carrier would have " 'require[d] an innocent consignee to defray freight charges exactly double the amount contemplated by the applicable tariff.' " *Id.* at 347, 102 S.Ct. at 1822, quoting *Admiral*, 442 F.2d at 65 (Stevens, J., concurring).

Since Fisher and Flaherty had paid the freight charges to Tex–Ark, and since EF Operating knew of these payments as evidenced by the bills of lading and other documents marked "prepaid," EF Operating is precluded from collecting its freight charges against these consignees. See *Id.; Missouri Pacific*, 409 F.2d at 884; *Admiral*, 442 F.2d at 62–63.

### IV.

■ We hold that when a shipper-consignor defaults on payment of freight charges, equitable estoppel precludes a carrier, delivering goods under bills of lading marked "prepaid," from collecting freight charges from an innocent consignee who had paid the shipper-consignor. We will affirm the order of the district court granting summary judgment to the consignees Fisher and Flaherty.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges, and SEITZ, Senior Judge.**

### SUR PETITION FOR REHEARING

June 3, 1993.

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.