**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3352
_____

In re:  VISTEON CORPORATION, et al.,
Debtor


INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
UAW,
Appellant
_____

No. 12-3353
_____

In re:  VISTEON CORPORATION, et al.,
Debtor


INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
UAW,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(Nos. 1:10-cv-00918, 1:10-cv-01070)
District Judge:  Hon. Richard G. Andrews

Argued May 20, 2014

Before:  McKEE, Chief Judge, CHAGARES, and NYGAARD, Circuit Judges.

(Filed: August 28, 2014)

John G. Adam, Esq.
Legghio & Israel
306 South Washington
Suite 600
Royal Oak, MI 48067

Peter D. DeChiara, Esq.
Cohen, Weiss & Simon
25th Floor
330 West 42nd Street
New York, NY 10036

*Counsel for Appellant*

Heather A. Bloom, Esq.
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC 20005

Andrew B. Bloomer, Esq.
Catherine L. Fitzpatrick, Esq.
R. Allan Pixton, Esq.
Kirkland & Ellis
300 North LaSalle Street
Chicago, IL 60654

Laura D. Jones, Esq.
James E. O'Neill, III, Esq.
Pachulski Stang Ziehl & Jones
Suite 1600
919 North Market Street
P.O. Box 8705, 17th Floor
Wilmington, DE 19801

*Counsel for Appellee*

_____

OPINION

_____

CHAGARES, Circuit Judge.

This case is about the consequences of failing to appeal a final order of a bankruptcy court. For the reasons that follow, we will affirm the orders of the District Court.

I.

Because we write solely for the benefit of the parties, we recount only the facts relevant to our disposition. Visteon, a supplier of parts for automobiles, filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in 2009. Shortly after filing, Visteon moved the Bankruptcy Court for permission pursuant to 11 U.S.C. § 363(b)(1) to terminate "other post-employment benefits" ("OPEB") that it previously had been providing for a number of its retirees. Visteon gave notice of its motion to every retiree that would be affected as well as the labor unions that had represented them. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") represented retirees at Visteon's plants in Canovanas, Puerto Rico and Lansdale, Pennsylvania (the "North Penn" plant). The Industrial Division of the Communications Workers of America ("IUE") represented approximately 2,100 retirees from Visteon's plants in Connersville and Bedford, Indiana. At the time that Visteon entered bankruptcy, all of these plants were closed, except for the North Penn plant.

The UAW, IUE, and numerous salaried employees contested the termination motion in the Bankruptcy Court. They argued that in order to terminate the OPEB, Visteon would need to comply with § 1114 of the Bankruptcy Code, which contains certain substantive and procedural protections for retiree benefits in bankruptcy. Visteon

3

argued that because these benefits were not vested and it could terminate them unilaterally outside of bankruptcy (or after emerging), it should not have to follow the special procedures of § 1114. After a two-day trial, the Bankruptcy Court determined that as a factual and legal matter, Visteon did not need to employ the procedures of § 1114, and could terminate the OPEB unilaterally while still in bankruptcy.

The Bankruptcy Court carved-out the benefits for retirees from the North Penn plant from its order, because the plant was still operating and an ongoing collective bargaining agreement ("CBA") governed employee and retiree benefits. Subsequent to the Bankruptcy Court's order, Visteon and the UAW entered into a Closure Agreement for the North Penn plant to settle all disputes related to the North Penn closing. The Closure Agreement set forth the procedures for terminating OPEB for North Penn retirees, and was approved by the Bankruptcy Court.

The IUE, on behalf of the retirees it represented from the Connersville and Bedford plants — and only the IUE, not the UAW — appealed the OPEB termination order to the District Court, which affirmed. The IUE then appealed to this Court, and we reversed. See In re Visteon Corp., 612 F.3d 210 (3d Cir. 2010) ("Visteon I"). We held that Visteon could not terminate retiree benefits without employing the special procedures of § 1114. We only vacated the Bankruptcy Judge's legal determination that § 1114 did not apply; we did not vacate any of his factual findings regarding whether the OPEB were vested, or opine on Visteon's right to unilaterally terminate OPEB once it emerged from bankruptcy. Id. at 212 n.1.

4

After we issued our mandate, the IUE and UAW both moved the Bankruptcy Court to reinstate the OPEB for all retirees. The Bankruptcy Court agreed and restored OPEB to all retirees except the North Penn subgroup (which was covered by the Closure Agreement) on August 17, 2010. In doing so, it stated that "view[ed] the Third Circuit as having if not technically, in effect, voiding, ab initio, this Court's order in December, authorizing termination of retiree benefits. . . . [My] holding is going to be, that all retiree benefits that were terminated in December, will need to be restored at some point. And that restoration will need to be backdated." Aug. 17, 2010 Hr'g Tr., ECF No. 3970 in No. 09-11786-CSS (Bankr. D. Del.), at 9-10. The Bankruptcy Court entered a written order restoring all retiree OPEB on August 30, 2010.

The Bankruptcy Court confirmed Visteon's reorganization plan on August 31, 2010, and Visteon emerged from bankruptcy on October 1, 2010. The confirmed plan reserved Visteon's right to terminate retiree benefits after emerging from bankruptcy, which it did a month later.[1]

Visteon timely appealed the Bankruptcy Court's August 30 restoration order to the District Court. It argued that the UAW and its retirees remained bound by the OPEB termination order because they never appealed it. It further argued that because the UAW was not a party in the IUE's appeal, it could not now reap the benefit of the relief

---

[1] Visteon's post-bankruptcy termination is not at issue in this appeal; it is the subject of separate litigation that was initiated in the Eastern District of Michigan. The Supreme Court recently granted a petition for certiorari that will help resolve the question of what CBA language is necessary to "vest" retiree benefits. See Tackett v. M & G Polymers USA, LLC, 733 F.3d 589 (6th Cir. 2013) cert. granted in part, 134 S. Ct. 2136 (U.S. 2014).

that we gave to the IUE. The UAW also cross-appealed the Bankruptcy Court's carve-out of the North Penn plant on account of the Closure Agreement. The District Court ruled in favor of Visteon on both Visteon's appeal and the UAW's cross-appeal, orders which the UAW timely appealed to this Court.

## II.

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157. The District Court had jurisdiction over the final order of the Bankruptcy Court restoring OPEB pursuant to 28 U.S.C. § 158(a). We have jurisdiction over the District Court's order pursuant to 28 U.S.C. § 158(d).

Our review of the District Court's disposition is plenary. In re Heritage Highgate, Inc., 679 F.3d 132, 139 (3d Cir. 2012). We exercise plenary review over the Bankruptcy Court's legal conclusions, and review its findings of fact for clear error. In re Philadelphia Newspapers, LLC, 599 F.3d 298, 303 (3d Cir. 2010).

## III.

## A.

It is clear "that any party contesting an unfavorable order or judgment below must file an appeal." EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1048 (3d Cir. 1993). "[A] party which does not appeal a decision by a district court cannot receive relief with respect to that decision." In re Taylor, 655 F.3d 274, 287 (3d Cir. 2011). "[T]he mere fact that a [party] may wind up with a judgment against one [party] that is not logically consistent with an unappealed judgment against another is not alone sufficient to justify taking away the unappealed judgment." Repola v. Morbark Indus., Inc., 980 F.2d 938,

6

942 (3d Cir. 1992). A party that makes "a considered choice not to appeal . . . cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong." Ackermann v. United States, 340 U.S. 193, 198 (1950).

A final order "precludes the parties or their privies from relitigating" issues elsewhere. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). "[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled." Id. A final order can "only" be challenged "by direct review." Id. Although this rule may be harsh, it furthers the important goals of finality, autonomy, and respecting settled expectations. See Ackermann, 340 U.S. at 198.

The Supreme Court's Ackermann decision is instructive. There, three people, a brother, his sister, and her husband, had their naturalization cancelled in a consolidated trial. The brother appealed, but the sister and her husband did not. The brother prevailed in his appeal, after which the sister and her husband attempted to avail themselves of the brother's victory. The Supreme Court rejected their attempt. It held that they had a "duty to take legal steps to protect [their] interest in [the] litigation," and that the outcome of the brother's case could not undo their "voluntary, deliberate, free, untrammeled choice . . . not to appeal." Ackermann, 340 U.S. at 197, 200.[2]

---

[2] Courts readily apply these principles in the bankruptcy context. See, e.g., In re Albrecht, 233 F.3d 1258, 1261 (10th Cir. 2000) (failure to appeal the bankruptcy court's final order prevented a party from challenging it in a subsequent appeal); Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 494 (3d Cir. 1998) (failure to file a notice of appeal from a final order of the bankruptcy court prevented further litigation of

The application of these principles to this case is relatively straightforward. The UAW opposed Visteon's motion to terminate OPEB for its retirees in the Bankruptcy Court and lost. The Bankruptcy Court entered an order which was final and appealable as to this specific issue. If the UAW wanted relief from that order, it had to appeal. It did not. Just as Visteon would have been bound by that order had it lost and not appealed, so is the UAW.

The UAW's decision not to appeal "was a risk," but one that the UAW made in a "calculated and deliberate" fashion. Id. at 198. At oral argument before the District Court, the UAW conceded that "were we to reconsider the situation, I would have filed [a notice of appeal] too, or at least urged my client to allow us to do that." Appendix ("App.") 285. It also acknowledged that it was "not saying that every time somebody appeals something in Bankruptcy Court, just because it could affect other people or there's a common issue, that in effect they've all appealed." Id. The UAW cannot now "seek to be the windfall beneficiaries of an appellate reversal procured by other independent parties." Moitie, 452 U.S. at 400.

Our opinion in Visteon I made no mention of the UAW whatsoever. We only mentioned the IUE and its "2,100 retirees from Visteon Corporation's manufacturing plants in Connersville and Bedford, Indiana." Visteon I, 612 F.3d at 212. We referenced the closing agreements that were specific to those plants. Id. at 213. The judgment that we issued along with the opinion in Visteon I was admittedly broad. It directed the

_____

the issue); Turshen v. Chapman, 823 F.2d 836, 839 (4th Cir. 1987). The UAW does not cite any decision that has held to the contrary.

8

Bankruptcy Court to "order Visteon Corporation to take whatever action is necessary to immediately restore all terminated or modified benefits to their pre-termination/modification levels." <u>Visteon I</u> Judgment at 2. But "[w]hen an opinion is silent as to the scope [of the parties,] the district court should assume as a general rule that only the issues and parties on appeal are included." <u>Repola</u>, 980 F.2d at 943. "[I]t would be anomalous to assume" that our judgment applied to "a nonparty to the appeal, without even mentioning it."[3] <u>Id.</u>

The sole exception to the rule that to obtain relief a party must appeal is "where the disposition as to one party is inextricably intertwined with the interests of a non-appealing party" and it is "impossible to grant relief to one party without granting relief to the other." <u>United States v. Tabor Court Realty Corp.</u>, 943 F.2d 335, 344 (3d Cir. 1991). This is typically the case in <u>in</u> <u>rem</u>-type disputes over property that cannot belong to more than one party. This exception has no application to this case because it is possible to grant relief to IUE retirees without also granting it to UAW retirees. The disposition as to IUE retirees was no more intertwined with the interests of UAW retirees as the interests of the family members were in <u>Ackermann</u>.

---

[3] The dissent argues that the instant "case is different because Visteon's actions negate explicit procedural protections Congress intended to create as part of the bankruptcy process" in § 1114. Slip Op. 3. The dissent has not identified anything unique about § 1114 that relieved the UAW or its retirees of their obligation to appeal the Bankruptcy Court's decision to decline to employ § 1114 procedures. If the UAW or its retirees thought that the Bankruptcy Court's OPEB termination order was contrary to law, our adversary system requires them to protect their rights through an appeal.

B.

The UAW advances a number of arguments to try to surmount this relatively straightforward application of firmly established law. None are availing.

1.

The UAW argues that Visteon I rendered the Bankruptcy Court's termination order void ab initio, or "null from the beginning." Black's Law Dictionary (9th ed. 2009). If this is the case, then the termination order never had any legal effect, meaning that the UAW retirees' OPEB were never actually terminated.

An order is only void ab initio if the court that entered the order (1) lacked the power or jurisdiction to do so, Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir. 1992), or (2) acted in a manner inconsistent with due process of law, Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610, 900 F.2d 608, 612 n.1 (3d Cir. 1990). Accord 11 Wright & Miller, Federal Prac. & Proc. § 2862 (3d. 2012). "[A] judgment is not void . . . simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional." Marshall v. Bd. of Ed., Bergenfield, N. J., 575 F.2d 417, 422 (3d Cir. 1978); accord United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) ("A judgment is not void, for example, simply because it is or may have been erroneous." (quotation marks omitted)).

The OPEB termination order falls into neither category.[4] There is no question that the Bankruptcy Court had jurisdiction over the parties and issues relevant to the OPEB

_____

[4] The dissent characterizes the Bankruptcy Court's initial termination order as "obviously void because that action was prohibited by the Bankruptcy Code." Slip Op. 2. Although

termination order. The process it afforded the parties leading up to its entry of the OPEB termination order was exemplary. All potentially impacted retirees were notified of Visteon's application. The parties briefed the issue extensively, took discovery and the Bankruptcy Court held a two-day trial. The OPEB order was not void ab initio.[5]

2.

The UAW next argues that its failure to appeal should not bind its retirees because it was never appointed to represent them. According to the UAW, because retirees are not employees that are current members of the UAW's bargaining unit, the UAW could only represent them after it was appointed to represent them through the process of § 1114. See 11 U.S.C. § 1114(c)(1) (outlining the process by which a union can become the "authorized representative of those persons receiving any retiree benefits.").

This argument fails for multiple reasons. It is inconsistent with the UAW's course of conduct. The UAW has represented in court filings that "[a]t all relevant times during [Visteon's] chapter 11 proceedings, the UAW has been the authorized representative of Visteon's former hourly employees . . . and other individuals at Visteon's former Caribbean facility in Puerto Rico, and its North Penn facility. . . who may have a claim against Visteon arising from any . . . agreements for the payment of retiree benefits." Supp. App. 5. Nothing prevents a union from representing its retirees if "the union has a

<hr>

the order ultimately was held to be legally erroneous, the dissent does not identify any error of jurisdiction or due process violation that rendered it void from its inception.

[5] The UAW also argues that Visteon I rendered the OPEB termination order void ab initio because the Bankruptcy Judge characterized it that way. We never so held. Nor did we as much as hint that the Bankruptcy Court lacked jurisdiction over the dispute, or that any party was deprived of due process.

11

legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." United Steelworkers of Am., AFL-CIO v. Canron, Inc., 580 F.2d 77, 80-81 (3d Cir. 1978). Further, even if this argument had any merit, it would not further the cause of the retirees from the Puerto Rico and North Penn plants because none of them individually appealed. The consequence of the UAW's argument is that each retiree would need to file an individual notice of appeal — after all, some entity would have needed to "take legal steps to protect [their] interest in [the] litigation." Ackermann, 340 U.S. at 197. None of them did.

3.

The UAW next argues that Visteon's confirmed plan, which incorporated the OPEB restoration order, moots this appeal. The UAW contends that because the "provisions of a confirmed plan bind the debtor," 11 U.S.C. § 1141, Visteon would have needed to appeal the plan in order to pursue an appeal of the OPEB reinstatement order. This squarely conflicts with our holding in In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002) that "[t]he confirmation of [the debtor's] plan of reorganization does not moot [an] appeal." The UAW has not advanced any reason why this clear statement of the law in Pillowtex does not apply.

4.

Finally, the UAW argues that even if our judgment in Visteon I did not obligate the Bankruptcy Court to restore OPEB to UAW retirees, it was within the Bankruptcy Judge's power to do so. In making this argument, the UAW relies on cases involving the law of the case doctrine. This doctrine "expresses the practice of courts generally to

12

refuse to reopen what has been decided," but is "not a limit to their power" to do so. Messinger v. Anderson, 225 U.S. 436, 444 (1912). The UAW, however, ignores an important limitation on the law of the case doctrine: it only governs the power of a court to revisit its prior orders prior to "final judgment." 18B Wright & Miller, Fed. Prac. & Proc. § 4478 (2d ed. 2002); cf. In re Continental Airlines, Inc., 279 F.3d 226, 232-233 (3d Cir. 2002) (noting that the law of the case doctrine is applicable to rulings within a single litigation). "If no appeal is taken, as was the case here, the apposite doctrine is that of issue preclusion," not law of the case. In re Scrivner, 535 F.3d 1258, 1266 (10th Cir. 2008); accord United States v. Gov't of V.I., 363 F.3d 276, 292 (3d Cir. 2004) (holding that claim preclusion prevents relitigation of an issue that could have been the subject of an earlier appeal).

Finality in bankruptcy differs from other contexts because more orders are considered "final" and subject to immediate appeal. "In the bankruptcy context, finality is accorded a somewhat flexible, pragmatic definition." Matter of Taylor, 913 F.2d 102, 104 (3d Cir. 1990). "To determine whether a decision is final, we consider three factors: (1) the impact of the matter on the assets of the bankruptcy estate, (2) the preclusive effect of a decision on the merits, and (3) whether the interests of judicial economy will be furthered." In re Marcal Paper Mills, Inc., 650 F.3d 311, 314 (3d Cir. 2011) (quotation marks omitted). An order is generally "final" if it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination." Matter of Taylor, 913 F.2d at 104. The order need not resolve the entire bankruptcy proceeding in order to be final. See In re Martin, 490 F.3d 1272, 1275 (11th Cir. 2007).

13

The order of the Bankruptcy Court terminating OPEB was undoubtedly final, subject to immediate appeal, and binding absent an appeal. It directly affected Visteon's assets because it allowed Visteon to stop paying ongoing obligations. It resolved the discrete issue of whether Visteon could terminate OPEB during bankruptcy, leaving nothing more for the Bankruptcy Court to consider. Importantly, it was binding and had preclusive effect between all involved parties, as the UAW conceded in its brief to the District Court. See Supp. App. 96. "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." Katchen v. Landy, 382 U.S. 323, 334 (1966); accord Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007). The termination order became final as to the UAW when the UAW decided not to appeal it.

IV.

The other issue in this appeal is the Bankruptcy Court's decision to carve the North Penn retirees out from its OPEB termination order. This decision was correct. The Bankruptcy Court did not include North Penn employees or retirees in the OPEB termination order because they were covered by an active CBA. An active CBA can only be modified or terminated through the special procedures of § 1113 of the Bankruptcy Code. After the Bankruptcy Court refused to allow Visteon to terminate the OPEB of North Penn retirees, instead of employing the procedures of § 1113, the parties negotiated the North Penn Closure Agreement.

The Closure Agreement was a settlement agreement "to settle and resolve all disputes and to set forth the rights and responsibilities of all parties" related to the closing, of the North Penn plant, including retiree OPEB. Supp. App. 74. The UAW

14

negotiated the agreement for employees and retirees "as the[ir] authorized or presumptive representative." Supp. App. 74. In the agreement, the UAW and those it represented waived and released any and all claims they had or may have against Visteon pursuant to the National Labor Relations Act and "all other statutes and regulations." Supp. App. 79. The Bankruptcy Court approved the Closure Agreement. Supp. App. 70-72.

The Closure Agreement specifically provided that North Penn employees and retirees would continue to receive OPEB for a specific time after the termination of the CBA, and that Visteon could then terminate their OPEB with three months' notice. Supp. App. 75. Pursuant to these terms, Visteon notified the UAW and its retirees in February 2010 that it intended to terminate OPEB on June 1, 2010. The UAW agreed to this process and specifically "acknowledge[d] that 11 U.S.C. § 1114 [was] not implicated by this agreement." Supp. App. 74. Each individual retiree signed a waiver releasing Visteon from "any and all claims" relating to the Closure Agreement and separation of employment more generally. Supp. App. 79. The agreement was a comprehensive, negotiated contract between the UAW and Visteon.

Settlement agreements are considered binding contracts and are governed by the ordinary principles of contract law. In re Cendant Corp. Litig., 233 F.3d 188, 193 (3d Cir. 2000). It is firmly established that "changes in the law after settlement do not affect the validity of the agreement and do not provide a legitimate basis for rescinding the settlement." Ehrheart v. Verizon Wireless, 609 F.3d 590, 595 (3d Cir. 2010); accord Coltec Indus., Inc. v. Hobgood, 280 F.3d 262 (3d Cir. 2002). Although the UAW may

15

have wished that it had waited until after <u>Visteon I</u> to negotiate this agreement, this subsequent change in the law cannot relieve the UAW of its calculated choice.

V.

For the foregoing reasons, we will affirm the orders of the District Court.

McKEE, <u>Chief Judge</u>, concurring in part and dissenting in part:

I agree with the majority's conclusion that the North Penn retirees' Closing Agreement with Visteon precludes any relief in this action. However, for the reasons that follow, I must dissent from the majority's conclusion that the employees represented by the UAW at the Puerto Rico plant were not entitled to reinstatement of "other post-employment benefits" (OPEB) after we decided *In re Visteon*, 612 F.3d 210 (3d Cir. 2010) (*Visteon I*).[1]

I understand my colleagues' concern for finality of judicial orders as well as the practical implications of extending the benefits of our decision in *Visteon I* to someone who never appealed that decision. However, the issue here is not merely whether persons who did not appeal that decision should be allowed to benefit from it. Rather, under the unique circumstances here, we must also consider whether the failure to appeal somehow cloaked Visteon with the authority to terminate benefits in a manner that directly contravenes a controlling statute that would otherwise limit Visteon's ability to terminate employee benefits in bankruptcy.

In *Visteon I,* we held that Visteon could not terminate retiree benefits without first complying with the special procedures mandated by 11 U.S.C. § 1114. We stated:

---

[1] Inasmuch as I am responding to a nonprecedential opinion which is intended only for the parties who are familiar with the underlying law, I will not elaborate upon the facts of the cases cited in support of my position, nor engage in a detailed discussion or analysis of those cases. Rather, consistent with our customary practice in drafting nonprecedential opinions, I will only very briefly explain why I disagree with my colleagues' analysis.

We hold that § 1114 is unambiguous and clearly applies to *any and all retiree benefits*, *including the ones at issue here. . . .* Accordingly, disregarding the text of that statute is tantamount to a judicial repeal of the very protections Congress intended to afford in these circumstances. We must, therefore, give effect to the statute *as written.*"

*Visteon I,* 612 F.3d at 219 (italics added). Thus, Visteon's purported termination of employee benefits without complying with § 1114 was obviously void because that action was prohibited by the Bankruptcy Code.

My colleagues' contrary holding allowing Visteon to terminate the benefits of employees represented by the UAW despite our ruling in *Visteon I*, and the unambiguous text of § 1114, effectuates the kind of judicial repeal of the protections of that statute that *Visteon I* sought to preclude. The result is that Visteon has now managed to terminate benefits in a manner that we have just held is absolutely contrary to federal law.

The cases the majority relies on are therefore readily distinguishable. For example, in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), retail purchasers brought an action against owners of various department stores alleging violations of the Sherman Act. The underlying appeal presented the issue of whether retail purchasers can suffer an actionable "injury" to their "business or property" under § 4 of the Clayton Act. The Court never had to decide if any party was authorized to "act" under federal law. Rather, the Court only decided whether plaintiffs could bring a

2

lawsuit.   In *Ackermann v. United States*, 340 U.S. 193 (1950), the party that "prevailed" did so based on a stipulation by the United States.[2]

This case is different because Visteon's actions negate explicit procedural protections Congress intended to create as part of the bankruptcy process. We do not excuse Visteon's omission based upon our reading of § 1114 or any other provision of the Bankruptcy Code. Nor is it based upon any suggestion that Congress intended to forgive the omission when an affected party does not seek legal redress.  Rather, the only reason for excusing Visteon's failure to comply with the Bankruptcy Code is that the UAW employees did not appeal the underlying decision of the Bankruptcy Court in *Visteon I.*  Yet, the statutory requirements of bankruptcy proceedings remain the same, and it is clear that Visteon did not do what the law required in order to terminate benefits.

As I noted at the outset, I recognize that my view raises significant issues of finality that are not readily resolved, and I agree that my colleagues' solution has the appeal of closure.  However, I know of no theory or precedent that would empower employers to do something that Congress has prohibited merely because of concerns of finality absent something to suggest Congress intended such a result.

Accordingly, I cannot join this judgment.

---

[2] *Repola v. Morbark Industries, Inc.*, 980 F.2d 938 (3d Cir. 1992) involved the failure to file a cross-appeal from a jury verdict. *EF Operating Corp. v. American Buildings*, 993 F.2d 1046 (3d Cir. 1993) also involved failure to file a cross-appeal for lack of personal jurisdiction.